234 So.2d 37

**HALL MOTOR COMPANY, Inc.
of Mississippi, a Corporation,**

v.

**R. W. FURMAN.**

**6 Div. 635.**

Supreme Court of Alabama.

April 2, 1970.

Spain, Gillon, Riley, Tate & Ansley, and
Ollie L. Blan, Jr., Birmingham, for appellant.

**500**

William W. Ross, Birmingham, Brobston & Brobston and J. T. Hagerty, Bessemer, for appellee.

HARWOOD, Justice.

The complaint in this case was submitted to the jury on four counts which sought damages allegedly resulting from the sale of an automobile which plaintiff averred was represented to him by the defendant as a new automobile in good condition, whereas in truth and in fact the automobile was an inferior one which had been damaged or wrecked prior to plaintiff's purchase of the same.

The jury returned a verdict in favor of the plaintiff under Count 5 of the complaint and assessed his damages at $8,000.

Defendant's motion for a new trial being denied, this appeal was perfected from the judgment and from the judgment on motion for a new trial.

Count 5, in substance, avers that on 20 January 1965, the defendant was in the business of selling at retail Plymouth auto-

mobiles, and on that date the plaintiff purchased from the defendant a 1965 station wagon automobile, "which was fraudulently represented by the defendant to be a new Plymouth automobile in good condition." The count further avers that said automobile was not a new automobile and in good condition, but to the contrary, and prior to the time of sale, had been damaged or wrecked, which damages had been to some extent repaired, and were not obvious to the plaintiff on inspection, and were not made known to the plaintiff by the defendant; that such damages were known to the defendant, or by the exercise of reasonable diligence, should have been known to the defendant; "and plaintiff avers that he relied upon the representaions made by the defendant that said automobile was in fact a new Plymouth automobile and in good condition, and as a result of his reliance upon said fraudulent representations by the defendant," he purchased said automobile and was thereby damaged. Both compensatory and punitive damages were claimed.

The evidence below tends to show that the plaintiff-appellee went to the defendant-appellant's place of business seeking to purchase a Plymouth station wagon of a certain type and color. The defendant did not have such an automobile in stock, but offered to order one from the factory. A price was negotiated by examination of brochures.

In a day or so the plaintiff was called by Mr. Cunningham, a salesman and agent of the defendant, and told that the defendant had located a station wagon in Selma which met his requested specifications except for the color. The station wagon had been located in Selma through the Chrysler Motor Company in Atlanta. The plaintiff was told that the station wagon could either be driven to Bessemer for his inspection, or one of defendant's salesmen would drive him to Selma in order that he might look at it and see if he wanted it.

The plaintiff elected to drive with Mr. Vines, a salesman of the defendant, to the Bailey Motor Company, an authorized Plymouth dealer in Selma. Vines had been instructed that if the plaintiff decided not to take the station wagon to return with the check given to him to pay for the transfer of the station wagon from Bailey Motor Company. In Selma, the plaintiff saw the station wagon, and saw it had air conditioning and other equipment. The color was satisfactory. He might have said in Selma he would take the station wagon, though he did not recall. If plaintiff had not indicated he would take the station wagon, it is incomprehensible that the vehicle would have been transferred by Bailey to the defendant and driven to Bessemer. Vines went in the office, and when he came out he told the plaintiff to drive the station wagon back to Bessemer, and he would follow. Vines instructed the plaintiff to drive at various speeds and to hold up his hand as he reached speeds of 50, 60, 70, and 80 miles per hour, this for the purpose of determining whether the station wagon had a "back lash" at such speeds. The plaintiff followed these instructions and noted nothing wrong.

When the plaintiff and Vines returned to defendant's place of business in Bessemer, the plaintif looked over the station wagon "like you would any new automobile." Vines told him he had a good automobile. The plaintiff then said he would take the station wagon, and a sale of it was consummated.

When the plaintiff went to a filling station shortly after purchasing the station wagon, it was discovered that the oil stick was missing. This was replaced by the defendant. From then on the plaintiff found many defects in the station wagon. The door to the glove compartment would not properly catch; there was a chip in the glass of the tailgate; he found cigarette butts in the ash tray, etc.

He took the station wagon to be examined by Clifton Baker, a mechanic and body repairman of considerable experience. Baker found that the car had been damaged on the right rear, in his opinion by considerable

force applied from the right or rear of the automobile. The right rear quarter panel was out of alignment which left a gap around the right rear door post, and the floor pan inside the station wagon had been bent. In his opinion the damages to the station wagon had been repaired and the damaged portion repainted.

W. E. Bailey, of Bailey Motors in Selma, testified that he had obtained the station wagon from the Chrysler Motor Corporation. It was delivered to his place in Selma by motor transport. It was not damaged when he first saw it. He saw the station wagon several times while it was in his stock. It had never been driven while in his custody, and no repairs had been made on it prior to his transferring it to the defendant. Two men came to Selma and picked it up, and one of them gave him a check for the station wagon. The transaction took only about ten minutes.

After numerous complaints by the plaintiff, the defendant had William R. Tate, Service Representative for Chrysler Motors Corporation, examine the station wagon. He found the right rear quarter panel and right rear door out of line. In his opinion this misalignment resulted in the construction of the station wagon at the factory; it was caused by faulty timing in the jig at the factory. A jig swings part of the body in position on the assembly line. The quarter panels are swung into place by it, and welded. The doors are the last item put on the car. It is possible for the jig to be out of time and one quarter panel be placed out of line with the other. Tate saw nothing about the station wagon that would indicate it had been wrecked or damaged after it had left the factory, or that repairs or replacements had been made on it. He authorized the defendant to have work done on the station wagon, to be paid for by Chrysler under warranty. This work involved cutting the seat post and rewelding it in place.

In the proceedings below the plaintiff testified that the reasonable value of the station wagon, if free of defects, was $4,000.

The reasonable value of the station wagon in the condition in which it was delivered to him was $1,800. In other words, under plaintiff's testimony, he suffered actual damages of $2,200 in the transaction. The jury returned a verdict under Count 5 of $8,000. It follows that $5,800 of the damages awarded must be considered as punitive damages.

The question with which we are presented therefore is whether, under the averments of Count 5, *and the evidence presented,* the plaintiff was entitled to recover punitive damages.

Three code sections are applicable to our consideration of this appeal, namely Sections 108, 110, and 111 of Title 7, Code of Alabama 1940, and are as follows:

"§ 108. *Misrepresentations.*— Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud.

"§ 110. *Deceit.*—Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

"§ 111. *Fraudulent deceit.*—One who wilfully deceives another with intent to induce him to alter his position to his injury, or risk, is liable for any damage which he thereby suffers."

Section 110, supra, deals with "deceit." At common law an action based on fraud was denominated an "action of deceit." This designation of fraud is to be found in

our decisions apparently regardless of whether the fraud was designedly untrue, or inadvertent. "Deceit" is actual fraud. It excludes the idea of mistake. 37 Am. Jur., Fraud and Deceit, Section 1.

Under our cases there is a difference between actionable fraud by misrepresentation of a material fact and an action for actual deceit. Rudisill v. Buckner, 244 Ala. 653, 15 So.2d 333. It would appear, however, that if the misrepresentation of a material fact was made willfully to deceive, or recklessly without knowledge, such conduct would be deceitful in fact. This is the first provision in Section 108, supra. The last alternative found in Section 108, relates to a fraud made by mistake and innocently. Such representation is a legal fraud, though it be only constructive. Hornaday v. First National Bank of Birmingham, 259 Ala. 26, 65 So.2d 678.

Under Section 108, the good faith of a party in making what proves to be a material misrepresentation, is immaterial if the other party acted on such misrepresentation to his injury. Standard Oil Co. v. Johnson, 276 Ala. 578, 165 So.2d 361. Only compensatory damages could be recovered in such a situation.

Section 111, defines fraudulent deceit as being a wilful deceit with intent to induce another to alter his position to his injury, for which the deceiver is liable for any damage suffered.

In Southern Building & Loan Assn. v. Dinsmore, 225 Ala. 550, 144 So. 21, it is stated that there is nothing in the language of Section 111 indicating a legislative purpose to change the theretofore existing rules as to the recovery of punitive damages in proper cases, and confine the recovery to compensatory damages. The same observation would seem equally applicable to Sections 108 and 110, supra. The court further states that in deceit (fraud) actions punitive damages may be recovered though not claimed, if the complaint discloses a gross fraud.

What are these prior existing rules?

In the often cited case of Caffey v. Alabama Machinery & Supply Co., 19 Ala. App. 189, 96 So. 454, it is pointed out that Section 108 is but a reflection of the general law on the subject of fraudulent misrepresentation, and that fraud being alleged, and established by the evidence, punitive damages may be recovered only if the fraud was malicious, oppressive, or gross, made with knowledge of its falseness, (or so recklessly made as to amount to the same thing), and made with the purpose of injuring the plaintiff. To the same effect see Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909; Treadwell Ford Inc. v. Leek, 272 Ala. 544, 133 So.2d 24; J. Truett Payne Co. v. Jackson, 281 Ala. 426, 203 So.2d 443.

Under Section 108 the misrepresentations must be of a material fact, made to be relied on as an inducement, and in fact relied on. Intent to deceive is not essential, since only constructive fraud may be present in such a situation. Under Section 110, knowledge of the fraud, with intent to deceive is required, and under said Section 110, the scope of liability is extended to cases of concealment of the fraud, and thus "material fact" has a wider meaning under Section 110 than under 108. Cartwright v. Braly, 218 Ala. 49, 117 So. 477.

To plead a case of fraudulent concealment by silence, facts should be averred from which a duty to speak arises. Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286. Such duty to speak depends upon the fiduciary or other relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case. Griel v. Lomax, 89 Ala. 420, 6 So. 741.

Counsel for appellant argues strenuously that punitive damages were not recoverable under Count 5, inasmuch as the action must be deemed as having been brought under Section 108, because the count fails to allege that the representations were made with intent to deceive. Counsel for appellee, to support his argument, sets out

a statement found in Cartwright v. Hughes, 226 Ala. 464, 147 So. 399, an intent to deceive and defraud having been averred, that the "only effect of the existence of such intent to deceive and defraud is to sustain a right to punitive damages."

If the evidence tends to establish an intent to deceive and defraud, it is difficult to see but that a fraud was committed grossly. This being so, punitive damages could be recovered under Count 5, even though it be considered as framed under Section 108, if the count properly averred, and the evidence established that the material misrepresentation was made knowingly and falsely, was relied on by the injured party, and the fraud was gross, malicious, oppressive, and committed with an intent to injure.

■ If a fraud is not perpetrated grossly, maliciously, oppressively, and with an intent to deceive, the damages to be recovered are such as will compensate for actual damages received. Foster v. Kennedy's Adm'r, 38 Ala. 359; Berry v. Wooddy, 16 Ala.App. 348, 77 So. 942.

Count 5 avers only that the station wagon was fraudulently misrepresented. This is not the equivalent of averring a wilful misrepresentation as a representation may be fraudulent, or false, and yet unintended and innocent. The Count further avers, however, that the defect in the station wagon was known to the defendant, or by the exercise of reasonable diligence, should have been known, and that the plaintiff relied upon the representations that the station wagon was in fact new. Defendant-appellant contends this averment is insufficient to support an award of punitive damages.

But we see no need to tarry over, or to base, our conclusion upon the sufficiency or insufficiency of the averments of Count 5 to support an award of punitive damages. Certainly the count is questionable. A consideration of the evidence presented necessitates the conclusion that it wholly fails to show gross, malicious or oppressive con-

duct on the part of the defendant, or any actions done with an intent to deceive.

The conduct of defendant or its agent, as disclosed by the evidence, affords no inference of gross or malicious misrepresentation of a material fact. Boriss v. Edwards, supra.

■ However, a false representation, even if made by mistake or innocently, is a legal fraud. Section 108, supra. The evidence in this case is sufficient to establish such species of fraud. The plaintiff was therefore entitled to compensatory damages. He was not entitled to punitive damages. The judgment is therefore erroneous to the extent of the amount of the punitive damages.

Appellee's counsel question the sufficiency of defendant-appellant's assignments of error to present for review the question of the award of punitive damages.

■ Assignment of error 12 is that the trial court erred in overruling appellant's motion for a new trial. This, of course, is a vicarious assignment of every well stated ground of the motion for a new trial which is adequately brought forth and argued in brief. Lonnie Russell Ford, Inc. v. Mitchell, 279 Ala. 340, 185 So.2d 132; Tucker v. Cox, 282 Ala. 489, 213 So. 2d 222.

Among the grounds of the motion for a new trial properly presented and argued in brief is ground 63, which reads:

"For that the verdict of the jury is not sustained by the great preponderance of the evidence in that the evidence did not justify the awarding of punitive damages under Count five of the complaint."

■ This assignment is sufficiently specific and direct to invite our review of the question involved. We further note that the appellant excepted to that portion of the court's oral charge submitting the possible award of punitive damages under Count 5, on the grounds, among others, that the evidence was not sufficient to

permit the jury to award punitive damages under Count 5. Further, the record shows that the appellant requested a written charge (No. 13) to this same effect, which was refused by the court.

Being of the conclusion that punitive damages could not be properly allowed in this case, and that under plaintiff's own testimony his actual damages were $2,200, this judgment will stand reversed unless the appellee shall, within thirty days after this date, file a remittitur pursuant to Section 811, Title 7, Code of Alabama 1940, reducing the judgment from $8,000 to $2,-200. Let notice issue to the appellee accordingly. If the appellee shall timely file such remittitur, the judgment will be reduced and affirmed for the sum of $2,200.

Affirmed conditionally.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.