323 So.2d 350

Savannah **WINDSOR** et al.

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION** et al.

**SC 1294.**

Supreme Court of Alabama.

Nov. 20, 1975.

J. Wm. Thomason, Bessemer, for appellants.

**82**

Huie, Fernambucq, Stewart & Smith, Birmingham, for appellees.

MERRILL, Justice.

This appeal is from a judgment in favor of the defendants in a suit arising out of the repossession of an automobile by the finance company. We affirm.

On September 27, 1969, Savannah Windsor purchased a 1970 Buick Skylark from Jim Burke Buick in Birmingham. She signed an installment sales contract which was later assigned to General Motors Acceptance Corporation (GMAC). She made a downpayment of $525.00 and agreed to pay the balance in thirty-six monthly installments of $141.93. The debt was refinanced on December 10, 1971. Between December, 1971 and February, 1973, her payments were delinquent repeatedly. On February 16, 1973, GMAC repossessed the automobile.

Savannah Windsor then brought an action against GMAC for conversion of her automobile, invasion of privacy, and conversion of certain miscellaneous personal property. Lue Bertha Windsor, Savannah's mother, brought an action against GMAC for "injuries suffered as a result of the Defendants intentionally engaging in a campaign to harass and intimidate her in connection with alleged arrearage of her daughter's installment agreement with General Motors Acceptance Corporation." The two actions were consolidated for trial. The trial judge directed a verdict in favor of the defendant in Lue Bertha's case. The only issue submitted to the jury in Savannah's case was whether or not there was a conversion of the personal property which Savannah claimed was in the car at the time it was repossessed. The jury returned a verdict in favor of GMAC. Savannah and Lue Bertha Windsor appeal.

Assignments of Error 4, 6, 10, and 19 are that the trial judge erred in granting defendants' motion for a directed verdict in Lue Bertha Windsor's case. Lue Bertha contends that GMAC harassed her and invaded her privacy in its efforts to collect Savannah's debt.

In *Norris v. Moskin Stores,* 272 Ala. 174, 132 So.2d 321, it was said:

"The mere efforts of a creditor, in this case the appellees, to collect a debt cannot without more be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt. But the right to pursue the debtor is not a license to outrage the debtor. The problem of defining the scope of the right of privacy in the debtor-creditor situation

is the problem of balancing the interest of the creditor in collecting his debt against that of the debtor in his own personality. Some courts appear to have struck that balance on the so-called 'rule of reason.' Thus in the recent case of *Housh v. Peth,* 99 Ohio App. 485, 135 N.E.2d 440, 449, affirmed 165 Ohio St. 35, 133 N.E.2d 340, the Ohio appellate courts asserted that 'a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy,' but that the debtor has a cause of action for injurious conduct on the part of the creditor which exceeds the bounds of reasonableness. We approve this statement."

The pertinent evidence produced at trial is as follows: Savannah Windsor lived at home with her mother, Lue Bertha. Bill Davis, a GMAC representative in charge of accounts, contacted Savannah, either by telephone or in person at her home, about fifteen or twenty times over a one or two-year period prior to repossession about her delinquent payments. Davis did not call or come by except when Savannah was behind on her payments. Sometimes Davis would call when Savannah was not at home. He came by the house several times in spite of the fact that Lue Bertha had told him over the telephone that Savannah was not there. Lue Bertha testified that he "would talk down" to her, that after he called she "just went crazy, like to have died," and that on one occasion she "went to the hospital and stayed there." On cross-examination, Lue Bertha testified as follows:

"Q (BY MR. FERNAMBUCQ) How many times did he call you on the telephone over the period of time we're talking about?

"A Well, it was several times, I don't remember.

"Q As a matter of fact, when we took your deposition, you said three or four times?

"A That's the way it was.

"Q Three or four times?

"A That's right.

"Q That took place over a period of months, is that right?

"A That's right.

     *     *     *     *     *     *

"Q And these three or four times when this Mr. Davis called, all he ever called you and talked to you about was the bill, about the car payment?

"A That's right.

"Q Did you ever talk to him face to face out there at your house?

"A Well, I would see him, I had a window, would look out the window and see when he would get there.

"Q You were hid?

"A Yes, sir.

"Q And the only contact he made with you was three or four or maybe five times when he called you on the phone?

"A That's right."

From all the evidence, the trial court was convinced that there was not a scintilla of evidence in support of Lue Bertha's allegation that GMAC unreasonably invaded her privacy in an attempt to collect Savannah's debt. A directed verdict in favor of GMAC naturally followed and we find no error in that action.

## II

Assignments of Error 12 and 13 are that the trial judge erred in Savannah Windsor's case when he, in effect, directed a verdict in favor of GMAC as to the invasion of privacy issue.

In *Norris v. Moskin,* supra, we cited with approval *Gouldman-Taber Pontiac v. Zerbst,* 213 Ga. 682, 100 S.E.2d 881, and *Tollefson v. Safeway Stores,* (Colo.) 142 Colo. 442, 351 P.2d 274. In *Zerbst,* it was held that a single letter written by the defendant-creditor to the plaintiff-debtor's employer, merely notifying him of the debt, did not constitute an actionable invasion of plaintiff's privacy. In *Safeway,* a defendant bill collector informed plaintiff's wife that if the debt were not paid, plaintiff's job would be in jeopardy. He also contacted plaintiff's superiors, seeking to bring pressure on plaintiff to pay. The Supreme Court of Colorado held that on these facts, plaintiff had no cause of action for invasion of privacy, pointing out that "there was no campaign of continuous harassment, no attempt to vilify or expose plaintiff to public ridicule, and no effort to cause plaintiff to lose his position."

In the present case, after Bill Davis repossessed the car, he drove to the Alabaster police station. He told the dispatcher what he had done in the event the car was reported as having been stolen. Later that same day, a policeman went by the school where Savannah was employed. There, in the presence of the assistant principal, she was informed that her car had been repossessed. The evidence also showed that Bill Davis asked James McQueen, who was not a regular employee of GMAC, to inventory and return Savannah Windsor's personal property which was in the car at the time it was repossessed.

From the foregoing authority and the facts presented at trial, it is evident that there was not a scintilla of evidence in support of the claimed invasion of privacy. There was no error in directing the verdict on the invasion of privacy issue.

■ Assignments of Error 11 and 21 are that the trial judge erred in charging the jury that "from all the evidence in the case the repossession of the automobile was not wrongful."

Title 7A, § 9–503, UCC, gives a secured party the right to take possession of collateral after default. Savannah Windsor admitted that she was one payment behind at the time that the automobile was repossessed. There was no error in this instruction.

■ Plaintiff, Savannah Windsor, also contended that some of her personal belongings in the car were not returned.

The installment sales contract provided as follows:

"[In the event of default] * * *

* * * seller or any sheriff or other officer of the law may take immediate possession of said property without demand, and without process including any equipment or accessories thereto; and for this purpose seller may enter upon the premises where said property may be and remove same. Seller may take possession of any other property in the hereinbefore-described motor vehicle at time of repossession, wherever such other property may be therein, and hold same for buyer at buyer's risk without liability on the part of seller, buyer to be liable for any charges for storing such property incurred by seller. * * *"

Since the removal of personal property was authorized by contract, the original taking was not wrongful per se, and the jury found in favor of defendant on this issue.

■ Some assignments of error deal with portions of the trial court's oral charge. ARCP 51 provides, in part, as follows:

" * * * No party may assign as error the giving or failing to give a written instruction, (not here applicable) or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict,

stating the matter to which he objects and the grounds of his objection. * * *"

The record fails to show compliance with this part of ARCP 51 and any error connected with these charges must be deemed waived. See *Barksdale v. Pendergrass,* 294 Ala. 526, 319 So.2d 267.

Affirmed.

HEFLIN, C. J., and MADDOX, JONES and SHORES, JJ., concur.