Appeal by the plaintiff from a summary judgment in favor of the defendant. We affirm.
The plaintiff, Reno, purchased a new 1977 Chevrolet automobile from Wood Chevrolet Company in Birmingham on March 14, 1977. The purchase contract was assigned to the defendant, General Motors Acceptance Corporation (GMAC), a company engaged in the business of financing automobiles. (No issue is made on the effect of this assignment.) The terms of the contract specified forty-two monthly installment payments of $141.54 each, beginning April 28, 1977, and totaling $5,944.68.
The plaintiff made timely payments until about March, 1978 when he became delinquent. Nevertheless he made payments as he was able to do so. He also received "past due" notices through the mails, but did not ask for or receive extensions of time within which to make the delinquent payments.
At about three o'clock a.m. on August 19, 1978, Oliver Brewer, an agent of GMAC, accompanied by another man, located the plaintiff's automobile in the parking lot of the Western Super Market in Tarrant, where the plaintiff was at work on the night shift. The GMAC agent possessed a duplicate key for the automobile which he had obtained from the Wood agency. According to Brewer he had unsuccessfully attempted to contact the plaintiff through *Page 1104 
the latter's parents. By using the key this agent drove the vehicle away. A fellow employee of the plaintiff witnessed the removal and immediately informed the plaintiff who then reported to the police that his car had been stolen. The police notified him later that it had not been stolen, but repossessed.
The plaintiff filed a complaint against GMAC alleging that, through its agents, GMAC had unlawfully converted his automobile by obtaining possession of it through "artifice or stealth" and without the plaintiff's consent. The complaint also alleged conversion of personal property contained in the car at the time of repossession. Other allegations included embarrassment and mental distress due to GMAC's conduct. Compensatory and punitive damages were claimed.
GMAC's answer denied all allegations. In due course GMAC moved for summary judgment based upon the complaint, the answer, the defendant's answers to the plaintiff's interrogatories, the plaintiff's deposition, and the affidavit of GMAC's agent, Brewer. The plaintiff filed a written response and counter-motion for summary judgment. Following argument on these motions the trial court granted the defendant GMAC's motion for summary judgment and entered judgment thereon. This appeal followed.
The respective positions of the parties may be summarized as follows:
The plaintiff contends that summary judgment for the defendant was error because there was a factual issue in dispute, i.e., whether possession of the automobile was obtained through fraud, artifice, stealth, or trickery without the owner's consent, or whether the repossession was committed in such a manner as to tend to promote a breach of the peace.
On the other hand, the defendant maintains that repossession was accomplished under the authority of the contract and without any tendency to breach the peace.
This Court has expressed itself recently on the issue of repossession of an automobile under a contract authorizing that action. In Hale v. Ford Motor Credit Co., Ala., 374 So.2d 849
(1979), involving a repossession for default in paying delinquent financing and insurance premiums, we applied the language of Code of 1975, § 7-9-201 which gives effect to a security agreement according to its terms.
The installment sale contract executed by the plaintiff contains the following provision:
. . . . .
 6. If buyer defaults in any payment due hereunder, . . . seller or any sheriff or other officer of the law may take immediate possession of said property without demand, . . . Seller may take possession of any other property in the hereinbefore described motor vehicle at time of repossession, wherever such other property may be therein, and hold same for buyer at buyer's risk without liability on the part of seller, . . . Such repossession shall not affect seller's right, hereby confirmed, to retain all payments made prior thereto by the buyer hereunder.
That provision does nothing more than follow the policy expressed in Code of 1975, § 7-9-503:
 Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . .
Such a policy now favors the creditor, in contra-distinction to the policy existing before the adoption of the Uniform Commercial Code. Clark Equipment Co. v. Armstrong EquipmentCo., 431 F.2d 54 (5th Cir. 1970).
The right under contract to repossess an automobile upon default has been consistently recognized since the adoption of § 7-9-503. A case in point is Ford Motor Credit Co. v. Ditton,52 Ala. App. 555, 295 So.2d 408; cert. den. 292 Ala. 423,295 So.2d 412 (1974). There an agent of the secured party announced an intention to repossess *Page 1105 
the vehicle covertly and ultimately did so at the place where the plaintiff worked by removing it with a wrecker. The facts failed to disclose any threat or intimidation by the repossessing agent. Cf. Windsor v. General Motors AcceptanceCorporation, 295 Ala. 80, 323 So.2d 350 (1975).
The plaintiff places much reliance upon Ford Motor Credit Co.v. Byrd, Ala., 351 So.2d 557 (1977). In that case this Court held that § 7-9-503 would not permit repossession through trickery, fraud, artifice or stealth without the consent of the owner. What was intended by that construction of § 7-9-503 is illuminated by the facts of that case. A dispute existed between a "repo man" and the purchaser on whether or not the installment payments on an automobile were in arrears. Following a conversation between them, the "repo man" requested the purchaser to drive to the car dealer's office to review his receipts against the agency's records. The purchaser drove there and parked his automobile in front of the agency. While the purchaser was inside disputing the account, the car was removed from the place where he parked it. Commenting upon the import of these facts, we observed:
 The evidence about these events clearly supports the jury's right to conclude that Byrd was lured to Bassett Ford so that possession of his auto might be obtained without his knowledge and consent, through stealth and trickery. [Emphasis added.]
Nothing in the facts before the trial court in this case suggested any such conduct. These facts disclose a repossession at night at the place where the plaintiff was employed, the removal having been effected with a duplicate key obtained from the seller-agency. There is absent any misrepresentation acted upon by the plaintiff which would equate this factual situation with the conduct condemned in Byrd, supra. See Code of 1975, §6-5-101; see also Hall Motor Co. v. Furman, 285 Ala. 499,234 So.2d 37 (1970). Nor was there any trick or artifice, for as we understand the terms, they connote the use of a contrivance or device in a fraudulent or deceptive manner. The use of the duplicate key was not accomplished by any deception or representation, direct or indirect, made to the plaintiff.Davis v. Boston Elevated Ry. Co., 235 Mass. 482, 126 N.E. 841
(1920).
"Stealth" is a word possessing the connotation of theft, or "stealing," a "wrongful taking of goods without pretense of title." Black's Law Dictionary, Fourth ed. at 1584. Here the repossession was made under claim of right under the terms of a contract, hence no stealth was present.
Finally, there is nothing in the facts suggesting that the repossession here either provoked or tended to provoke a breach of the peace. The plaintiff was not present when the auto was removed and, in fact, did not know of its repossession until he was told by a part-time fellow employee, who made no attempt to intercede, that he had seen two men driving it away. Indeed, the fact that the plaintiff himself resorted to a report to the police rather than to a self-help pursuit implies the opposite of a situation tending to disturb the public order. The plaintiff's deposition discloses his awareness that he was behind in his payments; he acknowledged having received "past due" notices by mail, and he knew that the car would be repossessed if he didn't pay. He never attempted to contact GMAC. Insofar as his personal property was concerned, his contract also gave GMAC the right to hold it for him. Not only does his deposition establish that he made no attempt to recover those articles, but the Brewer affidavit discloses GMAC's attempts to return them to him. Under these circumstances we cannot hold that GMAC's rights under the terms of the contract have been abrogated.
As this Court stated in Tolbert v. Gulsby, Ala.,333 So.2d 129 (1976):
 On appeal from summary judgment, the appellate court looks at the same factors which the court below considered in ruling on the motion. . . . Rule 56 of the Alabama Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, *Page 1106 
depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On a motion for summary judgment all reasonable inferences from the facts are viewed most favorably to the non-moving party and the moving party is required to establish that the other party could not recover under "any discernible circumstances." . . .
Having perused the pleadings and evidence we have concluded that the repossession here occurred under the provisions of the installment contract, and that the facts do not support any reasonable inference in support of the exception established byFord Motor Credit Co. v. Byrd, supra. Therefore the trial court's grant of summary judgment in favor of the defendant was proper and must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.