395 So.2d 475 (1981)
WINN-DIXIE MONTGOMERY, INC.
v.
Bobby HENDERSON.
79-456.
Supreme Court of Alabama.
January 16, 1981.
Rehearing Denied March 6, 1981.
*476 Robert C. Black of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, and Richard W. Whittaker of Pittman, Whittaker & Hooks, Enterprise, for appellant.
M. Dale Marsh of Cassady, Fuller & Marsh, Enterprise, for appellee.
BEATTY, Justice.
Winn-Dixie Montgomery, Inc., appeals from a $45,000.00 jury verdict in favor of Bobby Henderson. Winn-Dixie has been successful on two prior appeals to this Court involving the same fraud claim. Winn-Dixie Montgomery, Inc. v. Henderson, Ala., 353 So.2d 1380 (1977); Winn-Dixie Montgomery, Inc. v Henderson, Ala., 371 So.2d 899 (1979). We affirm.
Henderson claims damages for alleged false and fraudulent representations made by a Winn-Dixie employee, Mr. Lott, in Dothan, Alabama, in September or October, 1973, that he would be transferred to a store in Enterprise, Alabama. Relying on these representations, Henderson purchased a beauty shop in Enterprise for his wife. Later, in March 1974, after the promised transfer did not materialize, Henderson quit his job and sold the Enterprise beauty shop at a loss. He then started farming and also went into the chicken business with his father.
In his complaint Henderson included two fraud counts: Count 4, which alleges fraudulent and false statements made with an intent to deceive, and Count 5, which alleges representations known to be false at the time they were made, which were made willfully to deceive or recklessly without knowledge. Punitive damages were claimed under both counts.
During his case-in-chief, Henderson adduced from Morgan Britt Lee, another employee of Winn-Dixie, testimony that Winn-Dixie employees had previously made to him false representations concerning promised transfers. The trial court denied Winn-Dixie's motions for directed verdict at the close of the plaintiff's case and also at the close of all the evidence. The jury returned a verdict of $45,000.00 in favor of Henderson. After Winn-Dixie's motion for new trial and/or remittitur and motion for judgment notwithstanding the verdict were denied, Winn-Dixie appealed.
Winn-Dixie alleges that the evidence was insufficient to establish a case of legal fraud. In International Resorts, Inc. v. Lambert, Ala., 350 So.2d 391 (1977), this Court outlined the elements of a cause of action sufficient to constitute legal fraud by stating:
Regardless of whether the representations were made wilfully, recklessly or mistakenly, it has been held that there must be (1) a false representation, (2) the false representation must concern a material existing fact, (3) the plaintiff must rely upon that false representation, and (4) the plaintiff must be damaged as a proximate result....
While it is ordinarily true that an intent to deceive is an indispensable element of an action for fraud, when representations are made recklessly and heedlessly without any regard to their consequences, they will supply the necessary intent to support a fraud action. International Resorts, Inc., supra.
The statements made by Lott to Henderson that he would be transferred *477 were misrepresentations of a material fact, made with the intent that Henderson rely on them. Lott testified that he made the statements not with the intent to transfer Henderson immediately, but to "talk to him about it after the first of the year." Lott was aware that Henderson was relying on the promised transfer when be bought the beauty shop, and Henderson clearly suffered a loss on the beauty shop. Thus, there was sufficient evidence on which to support a fraud claim.
Winn-Dixie contends that the trial court erred in allowing Morgan Britt Lee to testify that when he was employed by Winn-Dixie his supervisor made misrepresentations to him concerning promised transfers, on the ground that such testimony was remote, irrelevant and prejudicial. While it is true that Lee's testimony in no way involved the conversations between Henderson and Lott, Winn-Dixie, not Mr. Lott, is the defendant in this case. Since Winn-Dixie, as the employer, is sought to be made liable under respondeat superior, previous similar acts by different agents, both of whom act for the defendant, are admissible to show fraud, scheme, motive or intent. See Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961). Moreover, wide latitude is allowed with regard to testimony in fraud cases since often the perpetrator is the sole possessor of the actual knowledge of the fraud. Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 311 So.2d 312 (1975). Thus, Lee's testimony was properly admitted by the trial court.
Appellant also contends that the evidence at trial was insufficient to support an award of punitive damages. The general rule is that punitive damages may be awarded in fraud cases if there is evidence from which the jury can conclude that the fraud was malicious, oppressive, or gross, and that the representations were made with knowledge of their falsity. Old Southern Life Ins. Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). Evidence of intent to deceive supplies proof that the fraud was committed grossly. Randell v. Banzhoff, Ala., 375 So.2d 445 (1979).
In the second appeal of this case this Court said:
[O]n the first appeal, there was not a scintilla of evidence to support an award of punitive damages. Unless something new was presented at the second trial, our holding on the present appeal must be the same. [371 So.2d at 902.]
At the second trial this Court did not find such new evidence and denied punitive damages. The question, therefore, is whether sufficient new evidence was presented at the third trial to support an award of punitive damages. We hold that it was.
The evidence at the third trial was more than a mere accumulation of that presented at the past two trials. Mr. Lee testified for the first time at the third trial concerning prior similar conduct of Winn-Dixie in order to show fraud, scheme, motive or intent. This new evidence supports a finding that the fraud was malicious, oppressive or gross. Moreover, the testimony adduced at the second trial, which showed that trained employees are a considerable benefit to Winn-Dixie during the busy Christmas season, was reiterated and amplified. As stated above, there was also sufficient evidence to find that the representations were made with knowledge of their falsity since they were made not with the intent to transfer Henderson immediately, but to consider the matter later. Clearly the totality of the evidence, both new and old, presented a jury question on the issue of intentional misrepresentations made with knowledge of their falsity and therefore were sufficient to support an award of punitive damages in this third trial. Since punitive damages are discretionary with the jury depending on the enormity of the wrong and the necessity of preventing similar wrongs, Neil Huffman Volkswagen Corp. v. Ridolphi, Ala., 378 So.2d 700 (1979), the damages awarded were not excessive but must be deemed proper.
Let the judgment be affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.
*478 TORBERT, C. J., and MADDOX, J., dissent.
ADAMS, J., not sitting.
TORBERT, Chief Justice (dissenting).
Although I am compelled to agree that plaintiff has produced a scintilla of evidence that defendant intentionally misrepresented that it planned to transfer plaintiff, I believe that the record does not disclose the highly culpable conduct necessary to support the jury's award of punitive damages. I am distressed the majority concluded that "[e]vidence of intent to deceive supplies proof that the fraud was committed grossly," because I do not believe such a rule can be fairly drawn from past cases. The effect of the majority opinion is to eradicate the traditional requirements for imposition of punitive damages in fraud cases, i. e., intentional and gross, malicious, or oppressive conduct, and to substitute the simple requirement that the evidence need only disclose intentional conduct.
I am of the opinion that the test for propriety of punitive damages in fraud cases requires not only intentional (or reckless) wrongdoing, but also exceptional or extraordinary circumstances clearly indicating aggravated, malicious, or spiteful conduct. See 10A Ala.Dig. Fraud, Key 61. I recognize that there is a very difficult and inarticulable distinction between intentional fraud and intentional, aggravated fraud. As was said in Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970), "If the evidence tends to establish an intent to deceive and defraud, it is difficult to see but that a fraud was committed grossly." Id. at 504, 234 So.2d at 41.
From a perusal of all [fraud] cases ... the conclusion can be drawn that there exists no strict line of demarcation dividing automatically and with absolute certainty the cases involving aggravated fraud from those in which the courts assume the existence of a simple fraud. All that can be said is that, to constitute aggravated fraud, there must be some additional element of asocial behavior which goes beyond the facts necessary to create a case of simple fraud.
Annot. 165 A.L.R. 614, 616 (1946).
The difficulty in application of the rule, however, should not dissuade us from applying it.
Applying the traditional test to the facts, I am unable to find evidence to support the punitive award. If the misrepresentation was intentional, all Winn-Dixie could hope to gain was Henderson's continued employment through the Christmas season. Additionally, Lott may have intentionally misrepresented that he would transfer Henderson when, at that time, he did not intend to do so; nevertheless, there is evidence that he planned to explore the possibility of a later transfer. Finally, only about $1,500 damage to Henderson is properly traceable to the fraud. These facts, along with the record as a whole, do not demonstrate the gross conduct I believe is necessary to support a punitive award.
I would affirm the compensatory award and reverse the award of punitive damages.

ON REHEARING
BEATTY, Justice.
On application for rehearing Winn-Dixie urges that this Court erroneously determined that there was sufficient evidence to support an award of punitive damages. In our opinion the following statement was made, "Mr. Lee testified for the first time at the third trial concerning prior similar conduct of Winn-Dixie in order to show fraud, scheme, motive or intent." (Emphasis added.) In the application for rehearing Winn-Dixie urges that this is an incorrect statement, since Mr. Lee testified at the first trial of this case, although he did not testify at the second trial. Moreover, Winn-Dixie urges that this Court erroneously based the determination that sufficient evidence was presented to award punitive damages on this erroneous belief that Mr. Lee was a new witness.
In the second appeal of this case Mr. Justice Bloodworth, speaking for this Court, said:

*479 [O]n the first appeal, there was not a scintilla of evidence to support an award of punitive damages. Unless something new was presented at the second trial, our holding on the present appeal must be the same.
Thus, the sole issue before us is whether new evidence was presented in the third trial which was not presented in the past two trials. It does not matter whether Mr. Lee was, in fact, a new witness. The only question is whether new evidence was presented at the third trial.
In an excess of caution we have reviewed the records of the three trials of this case in order to determine if the testimony of Mr. Lee in the third trial, which was relevant to the issue of fraud and the allowing of punitive damages, exceeded or went beyond that in the first trial.
In the first trial the following transpired:
Q. Was your termination voluntary?
A. Yes, sir.
Q. What brought it on?
A. I started over in Dothan as a stock clerk. I worked my way up to produce manager, assistant manager, and then in 1964, they transferred me to Enterprise as store manager of this store. I was manager until 1972, about January, and they had been planning on building a new store, and I had been told by my supervisor before that time, that he was going to transfer me back to Dothan, and as manager of the old store, and the first day of January or thereabouts, a day or two, he came in and told me that they hadwas going to transfer me to the Dothan store, but I wouldn't be store manager. I would just be assistant manager, and it would cut my pay approximately $42.00 per week plus me having to drive back and forth every day to work.
Q. All right. And you quit?
A. Yes, sir. I didn't quit that day, I worked approximately 7 weeks before I quit.
Q. After you quit, did you make application for your profit-sharing funds?
The remainder of his testimony concerned the profit-sharing plan of Winn-Dixie. After reviewing the record, we find that the purpose of his testimony at the first trial was to show that when Mr. Lee voluntarily terminated his employment, he received payments under Winn-Dixie's profit-sharing plan.
In the third trial, however, counsel for the plaintiff outlined the purpose of Mr. Lee's testimony by stating:
MR. MARSH: Judge, we expect to show prior similar conduct of the defendant which would be admissible evidence of other fraudulent transactions or deceit by the defendant. We feel it admissible to show fraud, motive, scheme, or intent.
There Mr. Lee's testimony went into detail regarding the duties of supervisors, especially as pertained to arranging transfers for employees, and the exact misrepresentations which were made to Mr. Lee by his supervisor. The inferences which a jury could have made from his testimony there were entirely different from those which would have been made after his testimony in the first trial. Certainly counsel for Winn-Dixie must have believed his testimony was admitted for a new purpose and was substantially different, since he urged in brief that the testimony of Mr. Lee in the third trial placed an "undue burden of surprise and prejudice on Winn-Dixie."
After our careful review of the records we find that although this was not the first time Mr. Lee testified, it was the first time his testimony was used to show fraud, scheme, motive or intent on Winn-Dixie's part. Much of his testimony was new evidence, which coupled with the other evidence elicited at trial, comprised more than a sufficient amount to support an award of punitive damages.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur.
*480 TORBERT, C. J., and MADDOX, J., dissent.
ADAMS, J., not sitting.