Rel: August 29, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2024-0619

_____

## Ex parte City of Montgomery

## PETITION FOR WRIT OF MANDAMUS

## (In re: Jessica De'Andrea

## v.

## City of Montgomery et al.)

## (Montgomery Circuit Court: CV-23-900972)

McCOOL, Justice.

The City of Montgomery ("the City") has petitioned this Court for a writ of mandamus directing the Montgomery Circuit Court to grant the City's motion to dismiss the claims that Jessica De'Andrea has filed against it.

<u>Facts and Procedural History</u>

In July 2023, De'Andrea filed a complaint against the City and other defendants, which she subsequently amended twice. The final version of De'Andrea's complaint alleged the following facts:

> "On March 14, 2015, [De'Andrea] was employed by the Montgomery Police Department ('MPD') as a patrol officer. At all times relevant and material to this complaint, [De'Andrea] was acting within the line and scope of her employment relationship.
>
> "On the same date and time, as she was returning to the police precinct in an assigned MPD patrol vehicle to complete end-of-shift paperwork, [De'Andrea] was involved in a collision with a motorcycle driven by Clint Walters.
>
> "On March 13, 2017, Mr. Walters filed suit against his own [uninsured- or underinsured-motorist] carriers, and against [De'Andrea] individually, in the Circuit Court of Montgomery County, … alleging negligence and seeking damages for personal injury.
>
> "Prior to the events described above and at all relevant times, [De'Andrea] was insured under a policy of liability insurance issued by Defendant States Self-Insurers [Risk Retention Group, Inc.,] insuring [the] City's agents and

2

employees, in whole or in part, for liability claims arising from motor vehicle collisions. This policy was brokered, negotiated and sold to the … City through Defendant Colonial [Insurance Agency, Inc].

"Prior to the events described above, [the] City entered into a contractual agreement with … Colonial to purchase liability insurance to protect and indemnify [De'Andrea] and other City agents and employees acting within the line and scope of their employment.

"Prior to the events described above and at all relevant times, [the] City also voluntarily elected to act and acted, in part, as an insurer for [De'Andrea] pursuant to a self-insured retention arrangement. Specifically, the City conducted itself as an insurer, attempted to negotiate settlement terms with the attorneys for Mr. Walters, created and then failed to address conflicts of interest common in third-party liability insurance claims, and/or retained or otherwise supplied defense counsel to [De'Andrea]. These actions expressly and/or implicitly created an insurer/insured relationship between the City and [De'Andrea]. The City therefore owed a duty to conduct itself ethically and in good faith concerning this relationship with [De'Andrea], and to comply with and meet the insurance industry standards and obligations concerning the same.

"[De'Andrea] was defended in the suit by the City's attorneys pursuant to an express or implied, contract-based attorney/client relationship. Defendants STACY LOTT BELLINGER, BRITTNEY JONES, STEPHANIE SMITHEE, WALLACE D. MILLS and WALLACE D. MILLS, PC, appeared for [De'Andrea] in the underlying action, and/or otherwise provided legal services to the Plaintiff as defined in the [Alabama Legal Services Liability Act], Alabama Code §§ 6-5-570, et. seq. (1988).

3

"Defendants were under a duty to comply with their contractual obligations, a duty to comply with and meet statutory mandates, a duty to conduct themselves in good faith and with a sense of fair dealing concerning [De'Andrea], a duty to comply with Alabama law and practice, a duty to ethically address and resolve conflicts of interest, and a duty to represent and protect the interests of [De'Andrea].

"[De'Andrea] was never provided a reservation of rights letter or otherwise notified of coverage/indemnity issues, exclusions, or limitations.

"Settlement negotiations took place between the attorneys for Mr. Walters, the City, and the insurance defendants. [De'Andrea] was not involved, nor invited to participate, in the settlement negotiations, was not at any time apprised of the status of the negotiations, nor was given an opportunity to approve any settlement offers.

"Following a trial, on or about May 5, 2022, judgment was entered on a jury verdict in favor of Mr. Walters and against … De'Andrea in the amount of $550,000 in compensatory damages.

"No appeal was taken by the Defendants, and no communication was made by the Defendants to [De'Andrea] concerning the prospects, procedures, or deadlines for an appeal, for post-trial relief, or for possible application of the municipal damages cap. The time for post-trial motions and appeal expired without [De'Andrea's] knowledge.

"Defendants did not seek, either before or after the judgment, any ruling from the [trial] court regarding the applicability of the statutory municipal damages cap, seek remittitur, or argue to the court that the municipal damages cap should apply.

"Defendants have refused, and continue to refuse, to pay and satisfy said judgment, or any portion of said judgment.

"Defendants acted negligently and/or wantonly and/or recklessly and/or maliciously and/or willfully and/or fraudulently and/or in bad faith and/or intentionally and/or beyond their authority and/or under a mistaken interpretation of the law when they caused or contributed to cause the injuries to [De'Andrea].

"[De'Andrea] filed Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama on July 27, 2022, as a direct and proximate result of Defendants' failures to settle the underlying case, communicate with [De'Andrea], and/or satisfy or obtain relief from the judgment.

"[De'Andrea] has exhausted all administrative remedies, and now brings this suit."

(Capitalization in original.)

Based on those allegations, De'Andrea asserted the following claims against the City: breach of contract; bad faith; fraudulent misrepresentation; negligent, wanton, or intentional bad-faith failure to settle; a violation of the Alabama Legal Services Liability Act ("the ALSLA"), § 6-5-570 et seq., Ala. Code 1975; negligence; wantonness; conspiracy; and failure to procure insurance. In short, those claims are based on De'Andrea's contention that the City "voluntarily assumed the role of [her] insurer"; that the City fraudulently misrepresented to her

5

that it "would handle [Clint Walters's negligence] claim against her" and that "her personal assets were not at risk" in that action; that the City failed to perform its "obligations and duties under the contracts of liability insurance," primarily by "refus[ing] to satisfy the judgment" that Walters has obtained against her; and that the City's attorneys breached the applicable standard of care while defending her against Walters's negligence claim.

The City filed multiple motions to dismiss the claims against it and asserted various arguments in support of dismissal. Following two hearings, the circuit court denied the City's motions on the basis that "it is not apparent beyond doubt that [De'Andrea] can prove no set of circumstances that would entitle her to relief." The City then timely filed a petition for a writ of mandamus in which it has asked this Court to direct the circuit court to dismiss the claims against the City.

## Standard of Review

"'"'"The writ of mandamus is a drastic and extraordinary writ, to be 'issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative

6

duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So. 2d 501, 503 (Ala. 1993); see also Ex parte Ziglar, 669 So. 2d 133, 134 (Ala. 1995)." Ex parte Carter, [807 So. 2d 534,] 536 [ (Ala. 2001)].'

"'"Ex parte McWilliams, 812 So. 2d 318, 321 (Ala. 2001).

"'"'Subject to certain narrow exceptions ..., we have held that, because an "adequate remedy" exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.' Ex parte Liberty Nat'l Life Ins. Co., 825 So. 2d 758, 761-62 (Ala. 2002)."

"'Ex parte Kohlberg Kravis Roberts & Co., 78 So. 3d 959, 965-66 (Ala. 2011).'

"Ex parte MERSCORP, Inc., 141 So. 3d 984, 990 (Ala. 2013). One of the exceptions to the general rule that the denial of a motion to dismiss is not reviewable by mandamus is where the motion to dismiss asserts a defense of immunity."

Ex parte Rock Wool Mfg. Co., 202 So. 3d 669, 671 (Ala. 2016).

7

Discussion

The City raises several arguments in support of its petition, the first being that, "under § 11-47-190, Ala. Code 1975, the City is immune from suit for every legal theory De'Andrea has or could allege against the City." Petition, p. 12. Section 11-47-190, Ala. Code 1975, states:

> "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, [Ala. Code 1975,] or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2[, Ala. Code 1975,] notwithstanding."

8

In other words, § 11-47-190 provides the City with immunity from any claim for damages asserted against it, unless the claim falls within one of the two exceptions set forth in the statute. See Ex parte City of Tuskegee, 932 So. 2d 895, 910 (Ala. 2005) (noting that § 11-47-190 "provides that a municipality is immune from tort liability," unless one of the exceptions therein applies); and Ex parte City of Bessemer, 142 So. 3d 543, 550 (Ala. 2013) (noting the "general rule of immunity for municipalities" under § 11-47-190 and the exceptions to that rule).

There is, however, a threshold problem with the City's immunity argument, which is that the City did not raise that argument in the circuit court, except with respect to De'Andrea's fraudulent-misrepresentation claim. In fact, at the first hearing that occurred, the City's attorney expressly stated that "[w]e're not dealing with immunity in the slightest," and, although the City did subsequently raise an immunity defense in its final motion to dismiss, it raised that defense only with respect to De'Andrea's fraudulent-misrepresentation claim.[1]

---

[1]We note that the City cited § 11-47-190 throughout its motion to dismiss and at the hearings on its motion. However, except when addressing De'Andrea's fraudulent-misrepresentation claim, the City

Of course, defenses that are jurisdictional cannot be waived and therefore may be raised for the first time in an appellate court, and some immunity defenses carry jurisdictional implications. See, e.g., Ex parte Board of Trs. of Univ. of Alabama, 264 So. 3d 850, 853 (Ala. 2021) (noting that sovereign immunity is a jurisdictional bar). However, the immunity provided by § 11-47-190 is not a jurisdictional defense but, rather, an affirmative defense that must be specifically pleaded or is otherwise waived. See City of Birmingham v. Business Realty Inv. Co., 722 So. 2d 747 (Ala. 1998) (holding that the immunity provided by § 11-47-190 is an affirmative defense that must be specifically pleaded and that, as a result, the City of Birmingham had waived any immunity defense it might have asserted under § 11-47-190 by failing to raise that defense in the circuit court).

"This Court will not grant relief to a petitioner or an appellant based on an argument presented for the first time to this Court." Ex parte City of Gulf Shores, 351 So. 3d 518, 521 (Ala. 2021). See also Ex parte Staats-Sidwell, 16 So. 3d 789, 792 (Ala. 2008) (noting that, on

---

cited that statute only for the proposition that any obligation it might have to indemnify De'Andrea is limited to $100,000.

mandamus review, this Court will consider only those arguments raised in the trial court). Thus, because the City limited its immunity defense in the circuit court to De'Andrea's fraudulent-misrepresentation claim, we will consider only whether the City is entitled to immunity from that claim. Any immunity defense that the City might have asserted against De'Andrea's other claims has been waived.

That said, the City argues that § 11-47-190 entitles it to immunity from De'Andrea's fraudulent-misrepresentation claim, and, in support of that argument, the City cites <u>Altmayer v. City of Daphne</u>, 613 So. 2d 366, 369 (Ala. 1993), in which this Court stated that § 11-47-190 "absolves a municipality from liability for the intentional torts of its agents." Thus, in that case, this Court held that the plaintiff "[could not] maintain claims against the City [of Daphne] for [the city manager's] alleged misrepresentation and promissory fraud." <u>Id.</u> De'Andrea counters with the argument that fraud is not always an intentional tort -- an argument that the City does not acknowledge in its reply brief, much less attempt to refute.

De'Andrea correctly argues that fraudulent misrepresentation is not always an intentional tort.

11

"[A] false representation, even if made innocently or by mistake, operates as a legal fraud if it is a material fact that is acted upon with belief in its truth. See <u>Mid-State Homes, Inc. v. Startley</u>, 366 So. 2d 734 (Ala. Civ. App. 1979); <u>Hall Motor Co. v. Furman</u>, 285 Ala. 499, 234 So. 2d 37 (1970). Moreover,

"'[a]n innocent misrepresentation is as much a legal fraud as an intended misrepresentation and the good faith of a party in making what proves to be a material misrepresentation is immaterial as to the question whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment.'

"<u>Smith v. Reynolds Metals Co.</u>, 497 So. 2d 93, 95 (Ala. 1986) (citing <u>Maring-Crawford Motor Co. v. Smith</u>, 285 Ala. 477, 233 So. 2d 484 (1970))."

<u>Davis v. Sterne, Agee and Leach, Inc.</u>, 965 So. 2d 1076, 1091 (Ala. 2007).

<u>See also</u> § 6-5-101, Ala. Code 1975 ("Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, <u>or if made by mistake and innocently</u> and acted on by the opposite party, constitute legal fraud." (emphasis added)).

Because fraudulent misrepresentation is not always an intentional tort, the City is not automatically entitled to immunity from that claim pursuant to § 11-47-190.  Rather, at the motion-to-dismiss stage of the proceedings, we must review the allegations in De'Andrea's complaint in

order to make that determination, and those allegations "'are viewed most strongly in [De'Andrea's] favor.'" Magee v. Boyd, 175 So. 3d 79, 131 (Ala. 2015) (citation omitted). "'[D]ismissal is proper only [if] it appears beyond doubt that [De'Andrea] can prove no set of facts in support of [her] claim that would entitle [her] to relief.'" Id. (citation omitted).

In her complaint, De'Andrea alleged that the City had falsely "represented to [her] that [it] would indemnify and protect her interests in [the] matter [Walters had filed against her], that she was covered under [an] [insurance] policy, that [the City] would handle [Walters's] claim against her, and that her personal assets were not at risk." De'Andrea also alleged that "[t]hese representations were made willfully with an intent to deceive, recklessly and without knowledge of their truthfulness, or due to mistake." (Emphasis added.) In other words, according to De'Andrea's complaint, the City's alleged misrepresentation might have been an "'innocent misrepresentation.'"[2] Davis, 965 So. 2d at 1091 (citation omitted). Thus, at the motion-to-dismiss stage of the

---

[2]At the first hearing that occurred, De'Andrea's attorney stated that he "need[ed] to do discovery" in order to determine whether the City's alleged misrepresentation was intentional or an instance of "mistaken fraud."

proceedings, De'Andrea's fraudulent-misrepresentation claim is not barred by § 11-47-190, which authorizes a claim for damages against a municipality when that claim alleges that the plaintiff's injuries were caused by the municipality's "neglect, carelessness, or unskillfulness." Stated differently, there is potentially a set of facts that De'Andrea could prove with respect to her fraudulent-misrepresentation claim that would invoke an exception to the City's statutory immunity. Accordingly, the circuit court did not err by rejecting, at the motion-to-dismiss stage of the proceedings, the City's argument that it is entitled to immunity from De'Andrea's fraudulent-misrepresentation claim.

The City raises several other arguments in its petition that, it says, entitle it to dismissal of the claims De'Andrea has asserted against it. Specifically, the City argues that it is "statutorily bound to indemnify De'Andrea for [no] more than $100,000"; that it "is not an insurance company and can never be an insurance company"; that it "had no duty to procure insurance to protect De'Andrea in the course of her employment"; that it "is not a 'legal service provider' as defined by the ALSLA" and, moreover, that De'Andrea cannot prove any set of facts that would establish a violation of the ALSLA; that, with respect to her

14

fraudulent-misrepresentation claim, "De'Andrea could not have justifiably relied on" the alleged misrepresentation; and that, "[b]ecause De'Andrea has no viable causes of action against the City, her allegations … provide no conspiracy cause of action." Petition, pp. 16, 18, 19, 23, 30, 31.

However, this Court generally will not entertain a mandamus petition that challenges the denial of a motion to dismiss because, should the plaintiff ultimately obtain a favorable judgment, the movant typically has an adequate remedy by way of an appeal. Ex parte Rock Wool Mfg., supra. As noted, there are some limited exceptions to this general rule, which is the reason we have addressed the City's immunity argument -- a recognized exception to the rule, id. -- and these exceptions exist because they involve issues for which an appeal has been deemed an inadequate remedy. See Ex parte Hodge, 153 So. 3d 734, 748 (Ala. 2014) ("'[T]he very reason for the limited exceptions we have carved out to the general rule that interlocutory denials of motions to dismiss … cannot be reviewed by way of a petition for a writ of mandamus is that there are certain defenses (e.g., immunity …) that are of such a nature that a party simply ought not to be put to the expense and effort of litigation.'"

15

(citation omitted)). But this Court has previously emphasized that, although we will conduct an interlocutory review of an immunity issue, "'[w]e confine our interlocutory review to matters germane to the issue of immunity'" and "will not consider secondary arguments" that have no bearing on that issue. Ex parte Kelley, 296 So. 3d 822, 826 (Ala. 2019) (quoting Ex parte Hudson, 866 So. 2d 1115, 1120 (Ala. 2003)).

The City's remaining arguments are not germane to the issue of immunity and do not fall within the previously recognized exceptions to the general rule that this Court will not consider a mandamus petition that challenges a trial court's denial of a motion to dismiss. See Ex parte Hodge, 153 So. 3d at 749 (listing the recognized exceptions). Also, the City has neither asked us to adopt new exceptions to that rule nor suggested that raising its secondary arguments in an appeal will be an inadequate remedy. As this Court has repeatedly stated: "'The burden rests on the petitioner to demonstrate that its petition presents … an exceptional case -- that is, one in which an appeal is not an adequate remedy.'" State v. Martin, 69 So. 3d 94, 97 (Ala. 2011) (citation omitted). Thus, because the City has not demonstrated (or even argued) that an appeal will not provide it with an adequate remedy for addressing its

16

non-immunity-based arguments, the City has failed to carry its burden of demonstrating that those arguments entitle it to the extraordinary relief provided by a writ of mandamus. Rather, if there is any merit to those arguments, the City may raise them in an appeal should De'Andrea ultimately obtain a judgment adverse to the City.

## Conclusion

For the reasons set forth in this opinion, the City has not demonstrated that it is entitled to a writ of mandamus directing the circuit court to dismiss the claims that De'Andrea has asserted against it. Thus, the City's petition for a writ of mandamus is denied.

PETITION DENIED.

Stewart, C.J., and Shaw, Wise, Bryan, Sellers, Mendheim, Cook, and Lewis, JJ., concur.