Kathleen McCombs appeals from a judgment based on a directed verdict in her negligence action against Bruno's, Inc., d/b/a Fresh Value Foods. The issue is whether the circuit court correctly held that McCombs had failed to present substantial evidence that Bruno's had knowledge of the alleged defective condition of its floor.
McCombs injured her left knee when she fell on April 21, 1990, in the defendant's Fresh Value Foods store in Cullman. McCombs alleged that she slipped and fell in a spot of "PineSol," a cleaning solution, that she says had spilled on the floor.
McCombs claims that Fresh Value employees were aware of the liquid on the floor and neglected to use due care in removing the liquid. The injury occurred when McCombs, while shopping with her children, stepped into the liquid with her right foot. Her foot slipped forward, and she landed on her left knee. She testified that while she was lying on the floor she heard persons standing behind her make statements regarding the length of time the substance had been on the floor. McCombs asserts that these statements were made by employees, and she argues that the statements show that the employees had notice of the spill before she fell.
McCombs testified as follows:
 "Q. Okay. Did you have any knowledge of how long the substance had been on the floor at the time you fell?
 "A. I have no idea how long it was on there. All I remember is people in the background talking about it being on the floor for 15 minutes or more.
 "Q. Now then, as you were there did any store employees come up while you were on the floor?
 "A. Well, while I was on the floor I didn't — being in such pain, I didn't really see anybody's face, because you know, in such great pain you are not really paying attention to faces of people. But you can hear people talking in the background, and there were people around talking.
 "Q. Did you hear any store employees there at Fresh Value say anything?
 A. Yeah. They were talking about the liquid being on the floor and that it was told before for it to be cleaned up. And they couldn't understand why they hadn't had somebody out there already to have cleaned it up."
McCombs says she never actually saw the people she says made these statements, and she admitted on cross-examination that she could not testify with certainty that the people who made the statements were actually employees. Instead, she contends that the jury could infer that they were employees, based on the content of the statements regarding the substance on the floor. While McCombs never saw the persons who made the alleged statements concerning the length of time the substance had been on the floor, there is evidence in the record that her daughter did.
McCombs's daughter, Rebecca Abney, testified that after her mother fell she saw and heard two female employees standing behind her mother make a statement to the effect *Page 712 
that they could not understand why the spill had not been cleaned up. Abney described both women as employees who were wearing brown store smocks and stated that one woman was in her forties and had dark brown hair. The record would support a finding that one of these women was Elaine Brown, who was in the store the day of the fall conducting an in-store demonstration just 20 feet from the area where McCombs slipped and fell. Brown was not employed by Bruno's, but was in the store performing a promotional demonstration for an independent company whose products are sold in the store.
Bruno's claims that McCombs fell within a minute after the spill and that the store did not have notice of the spill or time to clean it up before McCombs slipped and fell. Bruno's presented the testimony of Brown, who said that she saw an unidentified customer with a leaking bottle of PineSol in her cart; she said the bottle was leaving drops of the cleaning solution on the floor as the customer pushed her cart along the aisle. Brown said that before she could block off the area and notify the store employees, McCombs turned the corner and slipped in the PineSol. Brown said she went over to assist McCombs, but she testified, contrary to Abney's testimony, that she did not have a conversation with anyone about how long the liquid had been on the floor. However, she said she could not remember if any other employees were present at that time. Brown testified that less than a minute elapsed from the time she saw the PineSol on the floor until McCombs fell.
The store manager, Curtis Kilpatrick, testified that he was not aware of the spill until he was notified by Elaine Brown and that upon inspecting the area where Ms. McCombs fell, he found a spot of PineSol about 3 inches in diameter on the floor. After finding the spill, he said, he cleaned it up, and he said he did not find any other areas of the floor where the PineSol had been spilled. Kilpatrick testified that there were no other employees in the area when he arrived.
At the close of all the evidence, the circuit court directed a verdict for the defendant on the grounds that McCombs had failed to provide substantial evidence that Bruno's had had notice of the spill.
The rule is well settled with regard to the notice a premises owner must have before it can be held liable in a slip and fall action. In Cash v. Winn-Dixie Montgomery, Inc., 418 So.2d 874
(Ala. 1982), the court summarized the applicable law in slip and fall cases as follows:
 "The rule of law for cases such as this is that there is a duty upon all storekeepers to exercise reasonable care in providing and maintaining a reasonably safe premises for the use of their customers. The storekeeper is not an insurer of the customers' safety but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition. No presumption of negligence arises from the mere fact of injury to the customer. The burden rests upon the plaintiff to show that the injury was proximately caused by the negligence of the storekeeper or one of its servants or employees. Actual or constructive notice of the presence of the offending substance must be proven before the proprietor can be held responsible for the injury."
418 So.2d at 876.
The issue is whether McCombs presented substantial evidence that Bruno's had notice of the condition and had it long enough before the fall to have an opportunity, in the exercise of due care, to clean the spill. Bruno's cites several cases in which this Court has addressed the issue of notice to a store owner.Cash v. Winn-Dixie Montgomery, Inc., 418 So.2d 874 (Ala. 1982),Vargo v. Warehouse Groceries Management, Inc., 529 So.2d 986
(Ala. 1988), Bogue v. R M Grocery, 553 So.2d 545 (Ala. 1989), and Clayton v. Kroger Co., 455 So.2d 844 (Ala. 1984). These cases stand for the proposition that before a store owner can be held liable, the plaintiff must present evidence that the owner knew, or should have known, of the defective condition of its floor, before the injury occurred, and knew of it for a length of time sufficient for a reasonable person to conclude that the owner could have corrected the condition. *Page 713 
Bruno's specifically argues that Cash v. Winn-DixieMontgomery is "parallel" to this case and thus is dispositive. In Cash the plaintiff slipped and fell after stepping on a can of food in the middle of an aisle in a grocery store. The only evidence the plaintiff presented regarding knowledge of the defendant was evidence that the plaintiff had seen a soft drink bottle on the floor in another aisle. The Court, in affirming a judgment based on a directed verdict for the store owner, stated:
 "There is no evidence in the record whatsoever that the defendant knew the can was on the floor or that the can had been on the floor for such an inordinate length of time as to impute constructive notice. For aught that appears, the can may have been dropped on the floor by another customer only minutes before the plaintiff fell."
418 So.2d at 876.
We find Cash distinguishable from the present case. There is evidence that Bruno's, unlike the store owner in Cash, had notice that the liquid was on the floor. McCombs testified that she heard someone behind her state that the substance had been on the floor for "15 minutes or more" and that the store had been notified about the spill. McCombs's daughter corroborated this testimony with her own testimony that she heard some statements regarding the liquid on the floor and the fact that it had not yet been cleaned up. Furthermore, the daughter testified that she not only heard the statements but also saw two women in store smocks make the statements. This evidence is not based entirely on speculation, but is instead based upon the daughter's personal observations of the persons that made the alleged statements.
We have held in recent slip and fall actions that a summary judgment or a directed verdict is appropriate when a plaintiff's case amounts to no more than speculation as to the length of time the substance was on the floor or as to the defendant's knowledge. See Speer v. Pin Palace Bowling Alley,599 So.2d 1140 (Ala. 1992), and Vargo v. Warehouse GroceriesManagement, Inc., 529 So.2d 986 (Ala. 1988). However, the evidence in this case is more than mere speculation. Because McCombs could not directly testify that the people she heard talking were store employees, her case might be said to rest on speculation and conjecture if her testimony were her only evidence, but this was not the only evidence she presented. The daughter's testimony that she saw and heard two persons who appeared to be employees make the statements regarding the substance corroborates McCombs's testimony and creates direct evidence that employees of Bruno's had had notice of the spill for a sufficient time before the fall to correct the problem.
While Bruno's presented strong evidence that contradicts the plaintiff's evidence, the credibility and weight to be given to a witness's testimony are matters for the jury to determine. It is not the role of the circuit court to consider the credibility of a witness when it is ruling upon a motion for a directed verdict. Teague v. Adams, 638 So.2d 836, 838 (Ala. 1994). Furthermore, on an appeal from a judgment based on a directed verdict, this Court must review the testimony and other evidence in the record in the light most favorable to the nonmovant and it must entertain such reasonable inferences as the jury would have been free to draw. Teague v. Adams,638 So.2d 836, 837 (Ala. 1994), citing Wadsworth v. Yancey Bros.Co., 423 So.2d 1343 (Ala. 1982). Viewing the evidence in the light most favorable to the plaintiff, we conclude that she presented substantial evidence creating a question of fact as to whether Bruno's had notice of the spill before the plaintiff's fall, and if so, how much notice.
Because this evidence created a factual dispute that should have been presented to the jury, the circuit court erred in directing a verdict. Therefore, we reverse the judgment based on the directed verdict and remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
KENNEDY, INGRAM, and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result. *Page 714