965 So.2d 1076 (2007)
Mary G. DAVIS
v.
STERNE, AGEE AND LEACH, INC., Frank R. Davis, and Robert Davis, Jr.
1050478.
Supreme Court of Alabama.
January 12, 2007.
Rehearing Denied March 16, 2007.
*1079 J. Gusty Yearout, Jason L. Yearout, and C. Eugenia Lambeth of Yearout & Traylor, P.C., Birmingham, for appellant.
Peter Tepley, Charlie Elmer, Latanishia Watters, Michael Skotnicki, and Bert S. Nettles of Haskell, Slaughter, Young & Rediker, LLC, Birmingham, for appellee Sterne, Agee & Leach, Inc.
Gregory S. Graham of Mitchell & Graham, P.C., Childersburg, for appellees Frank R. Davis and Robert Davis, Jr.
*1080 STUART, Justice.
Mary Davis sued Sterne, Agee & Leach, Inc. (hereinafter "Sterne Agee"), and her two stepsons, Robert Davis, Jr., and Frank R. Davis (hereinafter "the sons"), alleging claims of fraud by forgery, conversion, negligence or wantonness, conspiracy, unjust enrichment, fraudulent misrepresentation, and fraudulent suppression, regarding the disbursement of the proceeds of the individual retirement account ("IRA") belonging to her late husband Robert E. Davis, Sr., and serviced by Sterne Agee. Sterne Agee and the sons moved separately for summary judgments. The trial court entered a summary judgment for Sterne Agee and the sons as to all claims. Davis appeals. We affirm in part, reverse in part, and remand.

Facts and Procedural History
Mr. Davis owned an IRA that was serviced by Sterne Agee and one of its financial advisors, Linda Daniel. During Mr. Davis's life, he changed the named beneficiary on this IRA four times. Each time the named beneficiary was either Davis or the sons.
In December 2001, Daniel received in the mail a change-of-beneficiary ("COB") form allegedly signed by Mr. Davis, changing the beneficiary of his IRA from Davis to his sons. Daniel did not compare the signature on this form to other known signatures of Mr. Davis to confirm its validity.
Mr. Davis died in February 2002. After his death, Davis contacted Daniel to inquire about the disbursement of the proceeds in the IRA. Daniel informed Davis that she was not the designated beneficiary on the IRA, and she refused to disclose information about the account. The sons also contacted Daniel. Because they were the designated beneficiaries, Daniel provided information about the IRA to them and pursuant to their request began to liquidate the IRA and to distribute the proceeds to the sons.
In July 2002, Davis, believing that the signature on the COB form dated December 8, 2001, had been forged, requested copies of the last three COB forms allegedly executed by Mr. Davis. Daniel released the documentation. After Davis had the signatures on the forms evaluated, Davis concluded that the signature on the COB form dated December 8, 2001 was not that of Mr. Davis.
On June 22, 2004, Davis filed her complaint in the circuit court, naming Sterne Agee and the sons as defendants. The sons completely liquidated the IRA after receiving notice of the lawsuit.
Sterne Agee and the sons answered the complaint. In June 2005 Sterne Agee moved for a summary judgment. In its motion, Sterne Agee maintained that Davis's claims of conversion, negligence or wantonness, and conspiracy were barred by application of § 7-8-115, Ala.Code 1975, and that her negligence claim was barred by the two-year limitations period, see § 6-2-3, Ala.Code 1975. Sterne Agee also argued that there was not substantial evidence to support any of Davis's claims. In support of its motion, Sterne Agee provided an affidavit from Daniel; that affidavit stated:
"I received what turned out to be a final designation of beneficiary from [Mr. Davis] in December 2001. This form was completed and executed and directed that the beneficiaries on the IRA account be [the sons]. I was surprised when I received the form because Mr. Davis had not recently requested a form and I had not recently sent him a form. It was during the holidays and I had already planned to call Mr. Davis and wish him a happy holiday. When I *1081 called to wish him happy holidays, I also asked him about the December 2001 beneficiary change, to verify that he wanted his sons to be his beneficiaries. [Mr. Davis] confirmed that he did in fact want his sons to be the beneficiaries and had sent the form to me to effectuate the change.
". . . .
"If I had suspected, or if there had been any hint of a forgery, I would have reported it immediately to the branch manager. As to the December 2001 final beneficiary change, although the form had not been requested [by or sent to] Mr. Davis immediately prior to the change in beneficiary, I called [Mr. Davis] and verified that the completed and executed designation I received, indicating he wanted his sons to be the beneficiaries of his IRA account, was correct. [Mr. Davis] confirmed that he wanted his sons to be the beneficiaries of his IRA account as he had previously stated on a number of occasions."
Sterne Agee also included excerpts from Daniel's deposition conducted in February 2005 in which she testified that she had had numerous conversations with Mr. Davis about changing the designated beneficiary of his IRA. She stated that she could not recall when she last spoke with Mr. Davis about the designation of a beneficiary for his IRA. Additionally, Sterne Agee submitted deposition testimony from Davis in which Davis admitted that she did not have any facts to support her contention that Sterne Agee and the sons had conspired to deprive her of the proceeds of Mr. Davis's account and that she was not aware of any conversations between Sterne Agee and the sons. Sterne Agee also attached excerpts from the deposition testimony of the sons, which indicated that they did not have contact with Sterne Agee or Daniel until after Mr. Davis had died. Last, Sterne Agee attached excerpts from the deposition testimony of Steven A. Slyter, Davis's expert witness on handwriting analysis, establishing that he believed an expert's assistance would be required to analyze Mr. Davis's signatures on the three COB forms to conclude that the signature on the December 8, 2001, COB form was not that of Mr. Davis.
In opposition to Sterne Agee's motion for a summary judgment, Davis argued that § 7-8-115 did not protect Sterne Agee from liability because, she argued, Sterne Agee did not satisfy the statutory requirement that it was acting "at the direction of its customer or principal" when it disbursed the proceeds of the IRA to the sons. In support of her argument, Davis presented evidence, in the form of the testimony of Slyter, that the signature on the December 2001 COB form was not that of Mr. Davis. She argued that a genuine issue of material fact was created as to whether the signature on the document was forged and whether Sterne Agee had breached its duty of care in disbursing the proceeds of the IRA. She also argued that Sterne Agee had presented no evidence to refute Slyter's testimony that the signature on the December 2001 COB form was not Mr. Davis's and that Daniel and Sterne Agee had breached the standard of care in servicing Mr. Davis's IRA. Last, to counter statements in Daniel's affidavit regarding Mr. Davis's intent, she attached an affidavit from Beverly Scott, a former nurse of Mr. Davis's, who stated:
"At one time he told me that he had changed the beneficiary of his IRA account to his [sons]. He then said that he felt bad about it and started crying. He said that he loved [Davis] and that he wanted to change the beneficiary back to her. He changed the beneficiary back to [Davis] because I saw him sign the change form and I placed it in the mailbox. He intended for [Davis] to *1082 be the beneficiary of that account. He never said anything about changing the beneficiary back to his [sons]."
In July 2005, the sons also moved for a summary judgment, claiming that Davis's action was barred by the limitations period and that no substantial evidence indicated that they had "forged or otherwise affixed the signature of [Mr. Davis] to an IRA designation beneficiary form through fraud by forgery, conversion, negligence, wantonness, and conspiracy."
Davis responded to the sons' motion, arguing that the deposition testimony of Slyter created a genuine issue of material fact as to whether Mr. Davis's signature on the December 2001 COB form was forged and, consequently, a genuine issue of material fact as to whether the sons, who were the beneficiaries of the IRA, had committed fraud by forgery and conversion.
In July 2005, Davis filed a request to amend her complaint to add claims of fraudulent misrepresentation and fraudulent suppression against Sterne Agee. On September 6, 2005, Sterne Agee's counsel filed a letter in the trial court, dated August 15, 2005, directing the court's attention to this Court's decision in Fortis Benefits Insurance Co. v. Pinkley, 926 So.2d 981 (Ala.2005),[1] and asserting that the claims in Fortis were "almost identical" to Davis's claims. On September 12, 2005, the trial court permitted Davis to amend her complaint. The trial court ordered a hearing on the summary-judgment motions for October 2005.
Sterne Agee filed a renewed and supplemental motion for a summary judgment on September 23, 2005, again alleging that § 7-8-115, Ala.Code 1975, protected it from liability, that Davis's negligence and wantonness claims were barred by the two-year limitations period, and that there was not substantial evidence supporting any of Davis's claims. The sons also renewed and supplemented their motion for a summary judgment, alleging that there was no genuine issue of material fact as to whether they had forged Mr. Davis's signature on the December 2001 COB form and that Davis's claims were barred by the applicable limitations period.
After conducting a hearing on the summary-judgment motions, the trial court entered a summary judgment for Sterne Agee and the sons as to all claims. The trial court based its judgment on its application of § 7-8-115, Ala.Code 1975, stating:
"This matter came before the court on a motion for summary judgment on October 25, 2005. The case is a dispute between [Davis] and [Sterne Agee] over the entitlement of financial assets in an Individual Retirement Account (`IRA') owned by [Mr. Davis] at the time of his death.
"The applicable statutory provision finds the Alabama Commercial Code § 7-8-115, its language and purpose [is] to protect brokers from liability when they deal with financial assets that are subject to competing claims. In pertinent part, § 7-8-115 provides:
"`A securities intermediary that has transferred a financial asset pursuant to an effective entitlement order, or a broker or other agent or bailee that has dealt with a financial asset at the direction of its customer or principal, is not liable to a person having an adverse claim to the financial asset. . . . '
"Ala.Code § 7-8-115 (emphasis added.) As set forth in the legislative commentary, the purpose of this statute is to *1083 enable brokers to act on the instructions of their customers without fear of liability arising from disputed claims to the financial assets maintained in their accounts. Quoting the Official Comment,
"`It is essential to the securities settlement system that brokers and securities intermediaries be able to act promptly on the direction of their customers. Even though a firm has notice that someone asserts a claim to a customer's securities or securities entitlements, the firm should not be placed in the position of having to make a legal judgment about the validity of the claim at the risk of liability either to its customer or to a third party for guessing wrong.'
"Ala.Code § 7-8-102, Official Comment at 3. Further, `the protections of Section 8-115 do not depend on the presence or absence of notice of adverse claims.' Id.

"The court takes notice of the notarized affidavit of Linda Daniel, the employee of Sterne Agee who had worked as the investment broker for Mr. Robert E. Davis for over ten years. Ms. Daniel's stated during the life of the IRA at issue, she personally spoke with Mr. Davis and verified his intent to change and his knowledge of the change before and after the change of beneficiary. Most importantly, [Davis] can offer no evidence to dispute, either directly or circumstantially, Ms. Daniel's testimony that Mr. Davis, Sr. verbally confirmed his intention under the December 8, 2001 designation to make his sons the beneficiaries of his account. While evidence presented by [Davis] that the signature on the change of beneficiary form was not that of Mr. Davis, there is also from the same source an acknowledgment that a layperson would not recognize this. The court finds no legal, regulatory or other standard applicable to Sterne Agee that would have required them to have or to implement any special procedure for detecting forged signatures on IRA beneficiary designation forms.
"[Davis] has offered no substantial evidence to show that Sterne Agee wantonly or negligently breached any duty of care owed to her when it transferred in February 2002 the financial assets in the IRA account of [Mr. Davis] to accounts of his two sons pursuant to his designation of them as beneficiaries on this account. For these reasons, it is hereby ORDERED, ADJUDGED, and DECREED that summary judgment is denied on all claims to the plaintiff and granted to [Sterne Agee and the sons]."
Davis appeals.

Standard of Review
"The standard of review for the grant or denial of a summary-judgment motion is as follows:
"`"We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary judgment motion:
"`"`We apply the same standard of review the trial court used in determining whether evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such a genuine issue of material fact. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." In reviewing *1084 a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.'"
"`American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002) (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000) (citations omitted))'

"General Motors Corp. v. Kilgore, 853 So.2d 171, 173 (Ala.2002)."
Nesbitt v. Frederick, 941 So.2d 950, 955 (Ala.2006).

Legal Analysis
Davis contends that the trial court erred in entering a summary judgment for Sterne Agee because, she says, § 7-8-115, Ala.Code 1975, does not protect Sterne Agee from liability when it improperly relied on a forged December 2001 COB form to pay the proceeds of Mr. Davis's IRA to the sons.
The parties agree that this case involves a "financial asset" as that term is defined in § 7-8-102(a)(9), Ala.Code 1975. Thus, this transaction is governed by Title 7, Ala.Code 1975, this state's version of the Uniform Commercial Code, which includes an article entitled Investment Securities. § 7-5-101, Ala.Code 1975. Title 7 governs the rights and obligations of entitlement holders, i.e., those who own financial assets,[2] and the holders and servicers, i.e., security intermediaries,[3] of those financial assets.
Section 7-8-115, Ala. Code 1975, provides:
"A securities intermediary that has transferred a financial asset pursuant to an effective entitlement order, or a broker or other agent or bailee that has dealt with a financial asset at the direction of its customer or principal, is not liable to a person having an adverse claim to the financial asset, unless the securities intermediary, or broker or other agent or bailee:
"(1) took the action after it had been served with an injunction, restraining order, or other legal process enjoining it from doing so, issued by a court of competent jurisdiction, and had a reasonable opportunity to act on the injunction, restraining order, or other legal process; or
"(2) acted in collusion with the wrongdoer in violating the rights of the adverse claimant; or
"(3) in the case of a security certificate that has been stolen, acted with notice of the adverse claim."
(Emphasis added.)
Thus, in order to determine whether § 7-8-115, Ala.Code 1975, protects Sterne Agee from the adverse claims[4] of Davis, this Court must first determine whether Sterne Agee's distribution of the proceeds of Mr. Davis's IRA to his sons was done at "the direction of Mr. Davis."
Section 7-8-107(b), Ala.Code 1975, provides:
"An indorsement, instruction, or entitlement order is effective if:
"(1) it is made by the appropriate person;

*1085 "(2) it is made by a person who has power under the law of agency to transfer the security or financial asset on behalf of the appropriate person . . .; or
"(3) the appropriate person has ratified it or is otherwise precluded from asserting its ineffectiveness."
An "`appropriate person' means . . . with respect to an instruction, the registered owner of an uncertificated security [or financial asset]." § 7-8-107(a)(2), Ala.Code 1975.
According to Davis, Mr. Davis's signature on the December 2001 COB form was forged; therefore, she maintains, Sterne Agee did not act at Mr. Davis's "directive" when it distributed the proceeds of the IRA to the sons pursuant to the forged COB form. Sterne Agee argues that because it distributed the proceeds of the IRA pursuant to Mr. Davis's direction as indicated on the December 2001 COB form, § 7-8-115 protects it from liability from Davis's adverse claims. Whether a COB form, allegedly not executed by the owner of the account or his agent, directing a change of beneficiary on an investment account is an effective directive as provided in § 7-8-115, Ala.Code 1975, is an issue of first impression in Alabama.
Section 7-8-115, Ala Code 1975, and its comments were adopted verbatim from § 8-115 of the Uniform Commercial Code. Very few cases have addressed whether a document that is not executed by the owner of the financial asset or his agent or representative and that provides directions to a securities intermediary is an effective directive. Powers v. American Express Financial Advisors, Inc., 82 F.Supp.2d 448 (D.Md.2000), aff'd, 238 F.3d 414 (4th Cir. 2000) (table), however, is one of these rare cases. In Powers, Powers and her boyfriend entered into a mutual-fund investment, in joint-and-survivor form, with American Express Financial Advisors, Inc. The contract with American Express required the signatures of both Powers and the boyfriend for any redemption request over $50,000. Powers and the boyfriend terminated their relationship and, pursuant to an agreement, "froze" the account while they determined how to distribute the proceeds.
Some months later, American Express received a letter, signed purportedly by Powers and the boyfriend, directing American Express to release the freeze on the account and to transfer the proceeds of the account, amounting to over $50,000, to another financial agency. The signatures on the letter were notarized. A financial worker at American Express compared the signature on the letter with an exemplar of Powers's signature, verified the signature as Powers's, and transferred the proceeds of the mutual fund. 82 F.Supp.2d at 451. The evidence presented to the district court, however, established that the signature was not that of Powers but was forged by her ex-boyfriend. Additionally, no evidence was presented indicating that the ex-boyfriend had authority to affix Powers's signature to the letter or that Powers had ratified the forgery. The district court held that, even if American Express exercised due care in accordance to accepted standards in the business, American Express was "still liable to Powers, because the order, for which she never gave any form of authorization or ratified, was `ineffective.'" 82 F.Supp.2d at 452.
The district court explained its reasoning, stating:
"[T]he commentary found by the Court supports this conclusion. For example, it is noted in Hawkland's Uniform Commercial Code Series, Section 8-107:03:
"`Thus, to say that . . . a direction is not effective is to say that . . . the [intermediary] is liable to the true *1086 owner . . . if it turns out that the . . . entitlement order was not actually authorized. Note too that . . . liability . . . does not depend on awareness of the lack of authority. The record keepers must, at peril of absolute liability, take steps to assure themselves that the transfer is authorized.'
"In this case, it may be argued that the imposition of liability on [American Express] is unfair. There are two answers to that argument. The first is that, whenever two relatively innocent persons are bamboozled by the same evildoer, the loss must rest somewhere. In such cases, the loss usually rests with he who is in the better position to protect himself and does not do so. Looking at the analogous situation under the (perhaps more familiar) law of commercial paper, and particularly the warranties on presentment, in the case of a forged drawer's signature on a check, the loss rests with the paying drawee, who is in a position to verify the drawer's signature. See Price v. Neal, 3 Burr. 1354 (1762). That loss rests with the drawee no matter how artful the forgery, unless the drawer is precluded from asserting the forgery (as he may be by, inter alia, agency law, just as an entitlement holder may be under Section 8-107(b)(3)). Similarly, the ultimate loss from a forged title endorsement rests with the first taker of the check post-forgery, no matter how artful the forgery. In short, the drawee and the taker, respectively, are in better positions to protect themselves from the loss occasioned by the forgery than is the person whose signature has been forged while she was unaware she was being victimized, even though they exercised due care and followed reasonable commercial standards."
Powers, 82 F.Supp.2d at 452-53.
In Watson v. Sears, 766 N.E.2d 784 (Ind.Ct.App.2002), the Court of Appeals of Indiana, citing Powers, also came to the conclusion that a securities intermediary is liable for a wrongful transfer when it acts pursuant to a forged instruction. The Watson court, adopting the rationale of Powers, held that a forged document does not qualify as an effective directive, stating: "Simply put, if the appropriate person does not make the order to transfer assets, then the order is ineffective." 766 N.E.2d at 789.
This Court adopts the rationale of Powers and Watson and holds that a forged directive, i.e., one not executed by the owner of the financial asset, his agent, or his representative, or one that is not ratified by the owner, his agent, or his representative, is not an effective instruction. Thus, a securities intermediary acting upon such an ineffective directive is not protected from liability by § 7-8-115, Ala.Code 1975.
Our holding is consistent with the examples provided in § 7-8-115, Ala.Code 1975. Each of the examples involves a situation wherein the securities intermediary has acted pursuant to an effective directive from the customer. When the securities intermediary acts pursuant to an effective directive, then the protections of § 7-8-115, Ala.Code 1975, clearly apply.
We decline Sterne Agee's request to apply to our interpretation of § 7-8-115 and to the facts of this case the rationale we used in Fortis Benefits Insurance Co., interpreting § 27-14-24, Ala.Code 1975, a statute relating to the disbursement of the proceeds of a life or disability insurance policy.
In Fortis, the appellant's husband, Jay Pinkley, owned a life insurance policy issued by Fortis Benefits Insurance Company. A person purporting to be Jay Pinkley *1087 requested via telephone a COB form. The form was sent to Pinkley's address and returned to Fortis with a signature purporting to be that of Jay Pinkley; the form changed the beneficiary of the life insurance policy from Pinkley's wife to his daughter-in-law. Pinkley died and Fortis paid the insurance policy proceeds to the daughter-in-law pursuant to the COB form it had received. Pinkley's wife sued Fortis, asserting that the signature was forged and that Fortis had wrongfully paid the insurance benefits, which, she said, should have been paid to her. Fortis moved for a summary judgment, which the trial court denied. Fortis then petitioned this Court for permission to appeal the trial court's denial of a summary judgment to this Court.
For purposes of the appeal, this Court assumed that the signature on the COB form was forged. Fortis, 926 So.2d at 983. The trial court certified the following controlling question of law for this Court's review: "`[W]hether [Ala.Code 1975 §] 27-14-24, bars [Pinkley's] claims.'" 926 So.2d at 983. Section 27-14-24 states, in pertinent part:
"Whenever the proceeds of, or payments under, a life or disability insurance policy . . . become payable in accordance with the terms of such policy or contract . . . and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract, or by such assignment . . . shall be entitled to receive such proceeds or payments . . . and such payments shall fully discharge the insurer from all claims under the policy or contract."
(Emphasis added.)
This Court held
"that § 27-14-24 does not cast upon the insurer a duty to investigate and discover whether a change of beneficiary has been procured by forgery, and that where an insurer in good faith pays life-insurance benefits in reliance on a forged change-of-beneficiary request form, which appears regular in all respects, the insurer is fully discharged `from all claims under the policy or contract.'"
Fortis, 926 So.2d at 989.
The language in § 27-14-24, however, is distinguishable from the language in § 7-8-115. Insurance law is different from investment-securities law. In insurance law, there is an accepted premise that "`the insurer is not under any duty to determine whether the change of beneficiary was procured or induced by improper means where it has no reason to believe or know that such was the case'" 926 So.2d at 984 (quoting 5 George J. Couch et al., Couch on Insurance § 28:97 (Rev.2d ed.1984)). There is also an established good-faith exception in light of the presumption that insurance benefits might be paid to someone with an inferior claim. Fortis. No such general premise, good-faith exception, or presumption exists with regard to investment-securities law. For example, § 7-8-507 recognizes that a securities intermediary has a duty to comply with an effective entitlement order and provides the consequences for the securities intermediary when it acts pursuant to an ineffective entitlement order, stating:
"If a securities intermediary transfers a financial asset pursuant to an ineffective entitlement order, the securities intermediary shall reestablish a security entitlement in favor of the person entitled to it, and pay or credit any payments or distributions that the person did not receive as a result of the wrongful transfer. If the securities intermediary does *1088 not reestablish a security entitlement, the securities intermediary is liable to the entitlement holder for damages."
Thus, because the language in Title 7, Art. 8, does not lend itself to a good-faith exception and no such presumptions exist as they do in insurance law, we refuse to interpret § 7-8-115 so broadly when nothing in the caselaw or the language of the statute lends itself to such a broad interpretation. Indeed, in light of the facts of this case, we can perceive of situations in which such a broad interpretation of § 7-8-115 would be inequitable and unjust.
Now, we must determine whether there is substantial evidence creating a genuine issue of material fact as to whether Sterne Agee distributed the proceeds of Mr. Davis's IRA pursuant to an ineffective directive. In other words, we must determine whether Davis produced substantial evidence that Mr. Davis's signature was forged or that Mr. Davis did not ratify the directive.
In Peterman v. Auto-Owners Insurance Co., 623 So.2d 1059, 1061 (Ala.1993), this Court held that where a handwriting expert determined that the signature on a disputed agreement was not the appellant's, the appellant had presented substantial evidence creating a genuine issue of material fact as to whether the signature was forged.
Here, Davis presented evidence, in the form of Slyter's opinion, indicating that the signature on the December 2001 COB form was not that of Mr. Davis. The evidence established that Slyter examined the signature purported to be Mr. Davis's on the December 2001 COB form and compared it to other known exemplars of Mr. Davis's signature. In Slyter's expert opinion, the December 2001 COB form was not signed by Mr. Davis. Thus, Davis produced substantial evidence that Mr. Davis did not sign the December 2001 COB form, creating a genuine issue of material fact as to whether Sterne Agee, relying on the December 2001 COB form, was acting pursuant to an effective directive from Mr. Davis.
Sterne Agee, however, argues that even if Mr. Davis did not sign the December 2001 COB form, summary judgment is nonetheless proper as to it because Mr. Davis made the directive effective by confirming it in a telephone conversation with Daniel. Sterne Agee submitted an affidavit from Daniel executed in June 2005, in which she stated that she verified with Mr. Davis "that the completed and executed [the December 2001] designation . . ., indicating he wanted his sons to be the beneficiaries of his IRA account, was correct." Daniel specifically stated in her affidavit that "[Mr. Davis] confirmed that he wanted his sons to be the beneficiaries of his IRA account as he had previously stated on a number of occasions."
Davis argues that consideration of Daniel's affidavit is improper because, she says, the affidavit contains inadmissible hearsay and statements that directly contradicted her deposition testimony. She moved to strike the affidavit, and the trial court denied the motion.
Rule 56(e), Ala. R. Civ. P., provides that "[s]upporting and opposing affidavits [to a summary-judgment motion] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In Blanton v. Liberty National Life Insurance Co., 434 So.2d 773, 776 (Ala.1983), this Court explained that "[a] court may not consider statements in affidavits based on hearsay, or otherwise inadmissible."
Rule 801(c), Ala. R. Evid., provides that hearsay "is a statement . . . offered in *1089 evidence to prove the truth of the matter asserted."
Daniel's affidavit contains the following pertinent testimony:
"When I called to wish [Mr. Davis] happy holidays, I also asked him about the December 2001 beneficiary change, to verify that he wanted his sons to be his beneficiaries. [Mr. Davis] confirmed that he did in fact want his sons to be the beneficiaries and had sent the form to me to effectuate the change.
". . . .
". . . . [Mr. Davis] confirmed that he wanted his sons to be the beneficiaries of his IRA account as he had previously stated on a number of occasions."
The above-quoted portion of Daniel's affidavit constitutes hearsay if it was offered to prove the truth of the matter asserted, i.e., to prove that Mr. Davis intended for his sons to be the beneficiaries of his IRA. Sterne Agee asserts that even if statements in the affidavit are hearsay, the statements are proper for consideration because they fall within the exception provided in Rule 803(3), Ala. R. Evid.
Rule 803(3), Ala. R. Evid., provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as plan, intent, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the facts remembered or believed" is not excluded by the hearsay rule. Sterne Agee asserts that the statements in Daniel's affidavit fall within this hearsay exception because the statements indicate Mr. Davis's then existing intent to make his sons the beneficiaries of his IRA. We agree.
The statements contained in Daniel's affidavit fall within the hearsay exception set forth in Rule 803(3), Ala. R. Evid., because even though Mr. Davis made the statement to Daniel after the COB form had been delivered to Stern Agee, the statement is not about what Mr. Davis remembered, but a statement of his then existing intent for his sons to be the beneficiaries of his IRA. Therefore, Davis's argument that the trial court's consideration of Daniels's statement in her affidavit was improper based on hearsay grounds is meritless.
Davis further argues that even if consideration of Daniel's statement in her affidavit that she confirmed with Mr. Davis that he had submitted the December 2001 COB form and that he intended for his sons to be his beneficiaries was proper, a telephone confirmation does not constitute ratification as contemplated by § 7-8-107(b)(3), Ala.Code 1975, and make the directive effective. The trial court stated in its order that "[Davis] can offer no evidence to dispute, either directly or circumstantially, Ms. Daniel's testimony that [Mr. Davis] verbally confirmed his intention under the December 8, 2001 designation to make his sons the beneficiaries of his account." This conclusion, however, is improper because the trial court erred when it resolved in favor of Sterne Agee a challenge to Daniel's credibility.
"It goes without saying that `"`a court may not determine the credibility of witnesses on a motion for summary judgment.'"'" Dixon v. Board of Water & Sewer Comm'rs of the City of Mobile, 865 So.2d 1161, 1166 n. 2 (Ala.2003).
According to Davis, Daniel's credibility is at issue because statements in her affidavit directly contradict her deposition testimony. According to Davis, "Daniel was asked specifically [during her deposition] whether she had any other conversations with [Mr. Davis] within the last year of his life concerning changes in beneficiaries" and "[s]he testified that there were no *1090 other conversations with [Mr. Davis]." (Davis's brief at p. 13). Davis's assertion, however, is misleading because the question and answer referred to in her brief occur 58 pages apart in Daniel's deposition.
On page 42 in the excerpts of Daniel's deposition contained in the record, she is asked, "Have you told me all the conversations you had with Mr. Davis, say, within the last year of his death regarding change of beneficiaries?" Daniel answered "I  there were so many conversations, I couldn't say." On page 100 of Daniel's deposition, she is asked, "Other than the conversation you've told me that you had with his two [sons], and the conversation with [Davis], and the conversation you had with [Mr. Davis], did you have any other conversations with anyone with regard to this account?" Daniels responded "No." Clearly, the "no" answer Davis is relying on in her argument in her brief to challenge the veracity of Daniel's affidavit does not lend itself to Davis's conclusion that when she deposed Daniel, Daniel informed her of all of her conversations with Mr. Davis. Indeed, Daniel's deposition establishes otherwise in light of Daniel's admission during her deposition that she was uncertain if she had recalled all of her conversations with Mr. Davis.
Davis also states that "at no time during Daniel's deposition prior to her affidavit did she disclose the conversation she later asserted." (Davis's brief at p. 12.) Although Davis, Sterne Agee, and the sons each submitted portions of Daniel's deposition testimony in support of their various motions, the record does not contain the entirety of Daniel's deposition testimony. Our review of the submitted portions of Daniel's deposition indicates that Daniel did state that her last conversation with Mr. Davis regarding the beneficiaries of the IRA was when he requested a COB form and at that time Mr. Davis did not specify who the new beneficiary would be. Her deposition reveals:
"Q. Did he ever have any conversations with you about changing the beneficiaries of his account?
"A. Yes.
"Q. Okay. How many conversations with him did you have about that?
"A. A number.
"Q. And when was the last one you had with him about that subject?
"A. Whenever he has requested a beneficiary change form.
"Q. Do you remember when that was?
"A. No.
"Q. Okay. Do you remember what he said; who he wanted to change the beneficiary to?
"A. He did not say. He said just send me the form."
The above-quoted portion of Daniel's deposition appears to indicate that she had no further conversations with Mr. Davis after his request for a COB form and, therefore, draws into question the credibility of Daniel's subsequent statement in her affidavit that Mr. Davis orally endorsed the December 2001 COB form, which Daniel had previously stated had not been requested. The credibility of Daniel's statements in her deposition and her affidavit are at issue and present an issue for the jury to resolve. McCombs v. Bruno's, Inc., 667 So.2d 710, 713 (Ala.1995). Thus, Davis has created an issue of material fact that must be resolved by the jury as to whether Sterne Agee acted pursuant to an effective directive when it distributed the funds in Mr. Davis's IRA to the sons.
Because Davis has created a genuine issue of material fact as to whether Sterne Agee acted pursuant to an effective directive, the trial court erred in entering a summary judgment for Sterne Agee on *1091 Davis's conversion claim. See Riscorp, Inc. v. Norman, 915 So.2d 1142, 1152 (Ala.2005)(recognizing that "`[t]o establish conversion, one must present proof of a . . . wrongful detention or interference with another's property'").
Likewise, Davis has produced substantial evidence creating an issue of material fact with regard to her fraudulent-misrepresentation claim against Sterne Agee.
Section § 6-5-101, Ala.Code 1975, provides:
"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
Thus, a false representation, even if made innocently or by mistake, operates as a legal fraud if it is a material fact that is acted upon with belief in its truth. See Mid-State Homes, Inc. v. Startley, 366 So.2d 734 (Ala.Civ.App.1979); Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970). Moreover,
"[a]n innocent misrepresentation is as much a legal fraud as an intended misrepresentation and the good faith of a party in making what proves to be a material misrepresentation is immaterial as to the question whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment."
Smith v. Reynolds Metals Co., 497 So.2d 93, 95 (Ala.1986) (citing Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970)).
Here, Davis has presented substantial evidence creating a genuine issue of material fact as to whether Sterne Agee made a fraudulent misrepresentation when Daniel informed Davis that she was not the beneficiary of Mr. Davis's IRA. Davis asked Daniel who was the designated beneficiary on Mr. Davis's IRA. Daniel informed Davis that she was not the beneficiary of the IRA; however, if the December 8, 2001, COB form was not an effective instruction, then the preexisting, last COB form, which designated Davis as the beneficiary, was effective, and Daniel had a duty to disclose to Davis that she was the beneficiary. Therefore, Davis has created an genuine issue of material fact as to whether Sterne Agee made a fraudulent misrepresentation.
Similarly, Davis has supported her fraudulent-suppression claim. Section 6-5-102, Ala.Code 1975, provides:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
"`"A duty to speak depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances."'" Deupree v. Butner, 522 So.2d 242, 245-46 (Ala.1988) (quoting Deupree v. Ruffino, 505 So.2d 1218, 1222 (Ala.1987)). "Section 6-5-102 does not require proof of intent to deceive. The breach of an obligation to disclose is sufficient to trigger liability for fraudulent suppression." Intercorp, Inc. v. Pennzoil Co., 877 F.2d 1524, 1535 (11th Cir.1989). Moreover, knowledge of the falsity of the misrepresentation is not an element of fraudulent suppression under § 6-5-102. Barrett v. Hanks, 275 Ala. 383, 155 So.2d 339, 343 (1963). See also Mutual Sav. Life Ins. Co. v. Brown, 245 Ala. 423, 17 So.2d 164 (1944). However, "the misrepresentation or suppression of the existing material fact must have led *1092 the plaintiff to act to his detriment in reasonable reliance thereon." Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602, 605 (Ala.1987) (citing Cooper v. Rowe, 208 Ala. 494, 94 So. 725 (1922)).
Davis has produced substantial evidence to support her claim of fraudulent suppression. Davis presented evidence indicating that Sterne Agee may have acted pursuant to an ineffective directive and that if Sterne Agee did act pursuant to an ineffective directive Daniel had a duty to answer Davis's inquiry and refused. Therefore, she has created a genuine issue of material fact with regard to her fraudulent-suppression claim.
Davis, however, has not established that the trial court erred in entering a summary judgment for Sterne Agee on her claims of conspiracy, negligence or wantonness, and unjust enrichment.
Davis contends that the trial court erred in entering a summary judgment for Sterne Agee on her conspiracy claim. According to Davis, Sterne Agee and the sons "conspired to injure [her] by depriving her of the proceeds of the IRA account." However, Davis's one-paragraph argument in her brief to this Court in support of this contention is conclusory. She quotes a general proposition of the law of conspiracy from Shook v. St. Bede School, 74 F.Supp.2d 1172, 1181 (M.D.Ala. 1999), and states: "The defendants conspired by agreeing together to liquidate the accounts of Frank Davis and Robert Davis, Jr., after notice of a dispute with Mary Davis concerning the IRA." She does not direct this Court to the "substantial evidence" establishing the elements of conspiracy to support her conclusion.
This Court has recently said:
"Rule 28(a)(10), Ala. R.App. P., requires the appellant to cite relevant authority in support of its arguments. This is so, because `"it is neither our duty nor function to perform all the legal research for an appellant."' Henderson v. Alabama A & M Univ., 483 So.2d 392, 392 (Ala.1986) (quoting Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984)). `Nor is it the function of the appellate courts to "make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' Pileri Indus., Inc. v. Consolidated Indus., Inc., 740 So.2d 1108, 1110 (Ala.Civ.App.1999) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)). Authority supporting only `general propositions of law' does not constitute a sufficient argument for reversal. Geisenhoff v. Geisenhoff, 693 So.2d 489, 491 (Ala.Civ.App.1997)."
Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708 (Ala.2004).
Davis's lone citation to a general principle of law without specific relevance to this case does not meet the requirements of Rule 28(a)(10), Ala. R.App. P.; therefore, this Court will not address her conspiracy issue.
Davis further contends that the trial court erred in entering a summary judgment for Sterne Agee on her claims of negligence and wantonness. According to Davis, she presented substantial evidence showing that Sterne Agee breached its duty of care in distributing the proceeds of Mr. Davis's IRA. Sterne Agee asserts that these claims are barred by the statute of limitations. This Court, however, will not address the merits of either party's argument because Davis, the appellant, has not satisfied the requirements of Rule 28(a)(10), Ala. R.App. P., for presenting this issue. Davis's citation to the statute and a general principle of law, along with a conclusory statement that she presented substantial evidence to support her claims *1093 do not establish sufficient argument to necessitate reversal. See Beachcroft Props., supra.
Additionally, Davis has not established that the trial court erred in entering a summary judgment for Sterne Agee on her unjust-enrichment claim. "The essence of the theor[y] of unjust enrichment . . . is that facts can be proved which show that defendant holds money which in equity and good conscience belongs to plaintiff or was improperly paid to the defendant because of mistake or fraud." Foshee v. General Tel. Co. of Southeast, 295 Ala. 70, 72, 322 So.2d 715, 717 (1975).
Davis's evidence does not establish that Sterne Agee holds money that belongs to her or that it was unjustly enriched by earning fees when it distributed the proceeds of Mr. Davis's IRA to the sons. Therefore, the summary judgment on the unjust-enrichment claim for Sterne Agee was proper.
With regard to Davis's claims against the sons, Davis has produced substantial evidence to support her claims of fraud by forgery and unjust enrichment; she, however, has not established that the trial court erred in entering a summary judgment on her claims against them of conspiracy and conversion. Davis's evidence supporting her claims against the sons consists of Slyter's opinion that the signature on the COB form was not made by Mr. Davis, Davis's testimony that Mr. Davis did not sign the COB, and the designation of the sons as the beneficiaries on the COB. This evidence does present substantial evidence creating a jury question as to whether, if the December 8, 2001, COB is an ineffective directive, the sons or another at the direction of the sons committed fraud and forged Mr. Davis's signature on the COB form[5] to support her claim of fraud by forgery and whether, if Sterne Agee distributed the proceeds of Mr. Davis's IRA pursuant to an ineffective directive to the sons, the sons may hold money which in equity and good conscience belongs to her. She, however, has not presented sufficient argument, see Rule 28(a)(10), Ala. R.App. P., to require a reversal of the summary judgment on her claim of conspiracy against the sons. Additionally, she has not presented substantial evidence indicating that the sons illegally assumed ownership of and took the proceeds of the IRA to support her claim of conversion against the sons. Thus, the trial court's summary judgment for the sons on the claims of conspiracy and conversion is affirmed, and its summary judgment *1094 for the sons on the claims of fraud by forgery and unjust enrichment is reversed.
Finally, Davis contends that the trial court erred in excluding the testimony of Curtis Bicking, Davis's proposed expert witness on the practices of the securities industry, in support of her motion in opposition to the motions for a summary judgment. According to Davis, the trial court erred because his testimony is relevant and proper for consideration. The trial court summarily granted Sterne Agee's motion to exclude Bickings's testimony without stating its reasons. Bicking's testimony appears relevant only to Davis's claims of negligence and wantonness. Because we have concluded that summary judgment for Sterne Agee was proper as to these claims, this contention by Davis is moot.

Conclusion
Based on the foregoing, the trial court's judgment is affirmed in part and reversed in part, and this cause is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and LYONS, HARWOOD, SMITH, and PARKER, JJ., concur.
BOLIN, J., concurs in the result.
SEE and WOODALL, JJ., concur in part and dissent in part.
SEE, Justice (concurring in part and dissenting in part).
I respectfully dissent from the main opinion to the extent it reverses the summary judgment in favor of Frank R. Davis and Robert Davis, Jr. ("the sons"), on Davis's claims of fraud by forgery and the summary-judgment motion of Sterne, Agee & Leach, Inc., with respect to Davis's claims of fraudulent misrepresentation and fraudulent suppression. In all other respects, I concur.
The main opinion holds that Davis produced substantial evidence to support her claims alleging (1) that Sterne Agee committed "fraudulent misrepresentation when Daniel informed Davis that she was not the beneficiary of Mr. Davis's IRA," (2) that Sterne Agee committed fraudulent suppression when Sterne Agee refused to answer Davis's inquiry "pursuant to an ineffective directive," and (3) that the sons committed fraud by forgery in forging Mr. Davis's signature to the December 2001 COB form. To constitute substantial evidence, the evidence must be "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); § 12-21-12(d), Ala.Code 1975. Thus, the evidence must suffice to permit a reasonable person to infer that Sterne Agee committed fraudulent misrepresentation and fraudulent suppression and that the sons committed fraud by forgery.
To recover under her claim of fraudulent misrepresentation, Davis "must prove (1) that there was a false representation; (2) that it concerned a material fact; (3) that the plaintiff reasonably or justifiably relied on the material misrepresentation; and (4) that the plaintiff was damaged as a proximate result of the reliance." Dodd v. Nelda Stephenson Chevrolet, Inc., 626 So.2d 1288, 1291 (Ala.1993). The fourth element necessitates a showing that the plaintiff incurred damage as a result of relying on the misrepresentation. Smith v. Reynolds Metals Co., 497 So.2d 93 (Ala.1986). With respect to her claim of fraudulent misrepresentation, Davis has not presented any evidence indicating that she was damaged *1095 by relying on Sterne Agee's misrepresentations. "In order to sustain an action alleging fraud, [Davis] must prove not only that . . . she relied on the representation, but also that . . . she acted upon that reliance." Liberty Nat'l Life Ins. Co. v. Allen, 699 So.2d 138, 142 (Ala.1997). I believe Davis has failed to present evidence sufficient to establish a prima facie case of fraudulent misrepresentation; therefore, I do not agree with the main opinion that Davis has produced substantial evidence to create a genuine issue of material fact as to her claim of fraudulent misrepresentation.
Similarly, Davis has failed to produce substantial evidence to create a genuine issue of material fact as to her claim of fraudulent suppression.
"In order to establish a prima facie claim of fraudulent suppression, [Davis] must produce substantial evidence establishing the following elements:
"`"(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result."'"
Johnson v. Sorensen, 914 So.2d 830, 837 (Ala.2005). Thus, Davis must show that she suffered actual damage as a result of Sterne Agee's suppression of an existing material fact. The main opinion notes: "Davis presented evidence indicating that Sterne Agee may have acted pursuant to an ineffective directive and that if Sterne Agee did act pursuant to an ineffective directive Daniel had a duty to answer Davis's inquiry and refused." 965 So.2d at 1092. The main opinion concludes: "Therefore, she has created a genuine issue of material fact with regard to her fraudulent-suppression claim." However, Davis presents no evidence indicating that she suffered actual damage as a proximate result of the alleged suppression, as is required in order to establish the prima facie case of fraudulent suppression. Because I do not believe that the record demonstrates that Davis suffered actual damage as a result of the fraudulent suppression, I believe she has failed to produce substantial evidence of her fraudulent-suppression claim.
With respect to Davis's claim of fraud by forgery, the main opinion concludes that Davis "produced substantial evidence to support her claims of fraud by forgery and unjust enrichment" against the sons. 965 So.2d at 1093. However, as the main opinion acknowledges, "Davis admitted that she did not have any facts to support her contention that Sterne Agee and the sons had conspired to deprive her of the proceeds of Mr. Davis's account and that she was not aware of any conversations between Sterne Agee and the sons." 965 So.2d at 1081. In fact, the only evidence Davis produced to support her claim of fraud by forgery is the expert testimony that the signature was not made by Mr. Davis and the fact that the sons would gain by the change of beneficiary. Even when viewed in the light most favorable to Davis, this evidence does not link both of the sons, or either of them individually, to the forgery absent unsubstantiated speculation; thus, she has failed to provide substantial evidence creating a genuine issue of material fact as to whether the sons committed forgery. II Charles W. Gamble, McElroy's Alabama Evidence, § 448.01 (5th ed. 1996) ("[A] case is not to go to the jury if the evidence in support of it is mere speculation, conjecture or guess. . . . [T]he moving party . . . must offer substantial evidence before that party's *1096 case is properly given to the jury." (citations omitted)). Therefore, I believe that Davis has failed to produce substantial evidence of her claim of fraud by forgery.
For the foregoing reasons, I respectfully dissent in part from the main opinion.
WOODALL, Justice (concurring in part and dissenting in part).
I respectfully dissent from the majority opinion insofar as it reverses the summary judgment for the sons on the claim of fraud by forgery. Otherwise, I concur.
NOTES
[1] This Court issued the Fortis decision on July 29, 2005.
[2] See § 7-8-102(a)(7), Ala.Code 1975.
[3] See § 7-8-102(a)(14), Ala.Code 1975.
[4] An "adverse claim" is "a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset." § 7-8-102(a)(1), Ala.Code 1975.
[5] Within her argument that she presented substantial evidence of fraud by forgery by the sons, Davis asserts that Rule 44(j), Ala. R. Civ. P., allows her to present witnesses familiar with the handwriting of the sons to testify as to whether it appears that they did, indeed, forge Mr. Davis's signature on the December 8, 2001, COB form.

Rule 44(j), Ala. R. Civ. P., provides, in pertinent part:
"Proof of Handwriting. Whenever the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison to prove or disprove such genuineness. Comparison of a disputed writing with any writing admitted or proven to the reasonable satisfaction of the court to be genuine shall be permitted to be made by witnesses who are qualified as experts, or who are familiar with the handwriting of the person whose handwriting is in question."
(Emphasis added.)
The plain language of Rule 44(j), Ala. R. Civ. P., indicates that when the genuineness of a person's handwriting is at issue, samples of that person's handwriting may be used for comparison. Rule 44(j) does not provide, as Davis asserts, that one may offer into evidence samples of numerous individuals' handwriting to allow the jury to guess who may have forged a particular document. Therefore, Davis's argument is unpersuasive.